### In re Edward HENRY and Vertella Henry, Debtors.

### No. 03–25104.

United States Bankruptcy Court,
W.D. Washington,
at Seattle.

July 9, 2004.

Amended July 28, 2004.

---

**AMENDED MEMORANDUM DECISION ON OBJECTIONS TO CLAIMS**

KAREN A. OVERSTREET, Bankruptcy Judge.

This matter came before the Court on the debtors' various objections to claims filed by creditors in the above case. The debtors commenced this case under Chapter 13 of the Bankruptcy Code on November 23, 2003. The table below summarizes the claims that are at issue. The debtors contend that these claims are not supported by sufficient evidence of the existence of a debt and therefore do not meet the requirements of the Code and Rules.[1] Each claim consists of the standard proof of claim form with no additional documentation, or with a one-page summary sheet attached showing the debtors' names, account number, and total alleged debt. The debtors request that each of the claims be stricken, that each creditor be given an opportunity to file an amended claim that contains sufficient evidence of the debt, and that a judgment be entered against each creditor for the amount of the debtors' attorneys' fees and costs incurred in bringing the objection to the claim.

Jay S. Jump, Kent, WA, for debtors.

K. Michael Fitzgerald, Seattle, WA, trustee.

## I. SUMMARY OF CLAIMS AT ISSUE

The following claims have been filed in this case and are at issue by virtue of an objection filed by the debtors:

| Creditor | Claim No. | Amount | Response |
|---|---|---|---|
| Retailers National Bank | # 9 | $1,042.03 | Amended Claim filed 1/26/04 |
| Retailers National Bank | # 24 | $1,042.03 | |
| Key Bank USA N/A | # 11 | $3,737.71 | None |
| CITI Cards | # 1 | $ 643.63 | Yes |
| Asset Acceptance, assignee of GE Capital/Home Depot | # 17 | $1,015.30 | None |

1. Unless otherwise indicated, all Chapter, Section and Rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* and to the Federal Rules of Bankruptcy Procedure, Rules 1001 *et seq.*

| | | | |
|---|---|---|---|
| Card Processing Center | # 14 | $4,340.70 | None |
| Renton Collections | # 13 | $ 17.24 | Claim withdrawn |
| General Electric/Wal–Mart | # 15 | $1,291.57 | Yes |
| General Electric/JCP Consumer | # 16 | $2,302.72 | Yes |
| FDS Bank—Bon Marche | # 2 | $ 477.62 | None |

eCast Settlement Corporation ("eCast"), as the assignee of Citi Cards (Claim No. 1), General Electric/Wal–Mart (Claim No. 15), and General Electric/JCP Consumer (Claim No. 16), filed a timely written response to the debtors' objections. Renton Collections also filed a timely written response to the debtors' objection, but then withdrew its claim prior to the hearing. Retailers National Bank filed an amended claim on January 26, 2004. The other creditors listed above did not respond in any way to the debtors' objection to their claims.

## II. ISSUES

As to each of the claims listed above, the Court must decide:

1. Whether each of the claims, as initially filed, is entitled to *prima facie* validity pursuant to Bankruptcy Code § 502(a);

2. As to any claim entitled to *prima facie* validity, whether the debtors have met their burden of defeating the claim; and

3. Whether the debtors are entitled to recover their legal fees and costs incurred in making the objections.

## III. DISCUSSION

### A. The Requirements of the Code and Rules.

Although the dollar amounts of the claims challenged by the debtors are relatively small, resolution of the above issues presents serious economic ramifications for both debtors and creditors. The debtors argue that they should not have to incur the cost of making a claims objection based on lack of supporting documentation when the Rules initially place the burden of providing support on the creditor. In addition, because the cost of pursuing an objection frequently exceeds the distribution the claim will receive under the plan, they are forced by the economics of the process just to pay the claim even if they have valid defenses to it.

eCast makes some equally appealing arguments from the creditors' perspective. eCast points out that many Chapter 13 plans pay little or no dividend to it as an unsecured creditor. So, it is not cost effective to invest the time and effort necessary to provide account statements, a copy of the credit card agreement or loan contract, and other supporting documentation when the proof of claim is filed. Instead, eCast argues that it should be permitted to submit a summary of the account information with its initial claim form and then respond to a request by the debtor for additional information. In most cases, eCast contends that the debtor has already listed the debt on the schedules at an amount that is identical or nearly identical to the amount listed by eCast in its claim form. If a debtor objects to a claim, eCast wants the option to respond with additional documentation if that is cost effective or to permit the claim to be disallowed by default.

The debtors counter eCast's arguments with two points. First, they argue that creditors are difficult to contact and typically do not respond promptly, even

though they represent in their claim forms that supporting information will be furnished upon request. The debtors allege that companies like eCast, that buy up small bad debts from other institutions, often do not possess any supporting information. Second, the debtors argue that the amount of the claim listed in their schedules is merely based upon the last account statement they received and that their counsel should have the opportunity to confirm the lawfulness of interest, fees and other charges typically included in these kinds of obligations and which are not broken out on those statements.

The arguments made by the debtors and eCast articulate perfectly the very real economic hurdles faced by debtors, trustees and creditors in resolving small claims in any bankruptcy case with assets available to creditors. The starting point to determine the burdens of the different parties in the claims process is Section 502(a). That section provides that a claim is "deemed allowed" unless a party in interest objects to the claim. Bankruptcy Rule 3001(f) provides that a proof of claim that is "executed and filed in accordance with [the bankruptcy rules] shall constitute *prima facie* evidence of the validity and amount of the claim." When a claim is based upon a writing, Rule 3001(c) requires that the original writing or a duplicate be filed with the proof of claim. If the writing has been lost or destroyed, the creditor may attach a statement of explanation. Similarly, Rule 3001(d) requires a creditor to attach evidence of perfection of a security interest to a proof of claim for a secured debt.

■ A claim that alleges facts sufficient to support a legal liability to the claimant and that is filed in accordance with the Code and Rules is generally held to satisfy Rule 3001(f) and to satisfy the claimant's initial burden of proof. The burden of

going forward then shifts to the objecting party to produce evidence sufficient to negate the *prima facie* validity of the claim. *See In re Holm,* 931 F.2d 620, 623 (9th Cir.1991); *In re Allegheny Int'l, Inc.,* 954 F.2d 167, 173–74 (3d Cir.1992); *In re Pugh,* 157 B.R. 898, 901 (9th Cir. BAP 1993).

Although courts have generally held that the failure to comply with Rule 3001(c) by attaching the writing upon which the claim is based does not alone justify disallowing the claim, courts have held that noncompliance with the rule negates the *prima facie* validity of the claim under Rule 502(a). *See In re Consolidated Pioneer Mortgage,* 178 B.R. 222, 226 (9th Cir. BAP 1995); *In re Stoecker,* 143 B.R. 879, 883 (N.D.Ill. 1992); *In re Petrich,* 43 F.2d 435, 437 (S.D.Cal.1930); *In re Lindell Drop Forge Co.,* 111 B.R. 137, 142–43 (Bankr. W.D.Mich.1990).

■ A credit card debt is a debt based upon a writing—a credit card agreement. A loan, other than one based upon an oral agreement, is based upon a writing—a promissory note. Accordingly, under Rule 3001(c), a creditor is required to submit a copy of the credit card agreement or promissory note as proof of the existence of the debt. When the agreement permits the creditor to charge interest and other fees, the debtor is entitled to a statement explaining the charges that are included in the debt. In a credit card transaction, documentation typically consists of account statements that show interest accrued, late fees and other charges imposed under the terms of the agreement.

**B. Applying the Rule to the Facts.**

■ So that the burden of the claims process is placed fairly on debtors and creditors in cases like this one, the Court will apply the following general rule: a creditor must, at a minimum, file with its

proof of claim form, but in no event later than in response to a claims objection by the debtor, (i) a sufficient number of monthly account statements to show how the total amount asserted has been calculated, and (ii) a copy of the agreement authorizing the charges and fees included in the claim. In the absence of that minimum evidentiary presentation, the creditor's claim should be disallowed.

### 1. Creditors Who Did Not Respond to the Objection.

■ Four of the creditors listed above, Key Bank USA N/A, Asset Acceptance, Card Processing Center, and FDS Bank–Bon Marche, did not respond to the debtors' objection. The Court concludes that the claims filed by these creditors are not entitled to *prima facie* validity under Section 502(a) because they do not contain sufficient evidence of the debt as required by Rule 3001(c).

Key Bank's claim number 11 states that the basis for the debt is "money loaned", yet there is no loan agreement or document attached to the claim. Instead, there is some kind of computer printout attached to the proof of claim which would permit the Court to conclude only that Key Bank is claiming a right to principal and interest. There is no way to determine from the proof of claim the terms of the loan or the breakdown of the debt. Accordingly, the claim is not entitled to *prima facie* validity.

The claims of Asset Acceptance, as assignee of GE Capital/Home Depot and FDS Bank–Bon Marche, are likewise deficient. Claim No. 17, which is held by Asset Acceptance, states that it is based upon money loaned and attaches a declaration stating that the account balance is $1,015.30, with no further specificity, and that the account has been assigned to Asset Acceptance. The claim of FDS Bank–

Bon Marche (No. 2) states that it is based upon money loaned, but no summary of the debt or document of any kind is attached to the proof of claim form.

The claim form of Card Processing Center (No. 14) states that it is based upon a credit card, but no credit card agreement or statement is attached to the proof of claim. Instead, the claim attaches a computer printout presumably showing principal and interest, but some testimony would be required even to establish that.

Having found that none of the four claims described above is entitled to *prima facie* validity, the Court must determine the appropriate remedy. As indicated above, courts generally require that the creditor be given an opportunity to provide support for the claim or amend the claim prior to disallowance. Had the objections here sought an order disallowing the claim in the event that no additional documentation was provided, the debtors would be entitled to that relief. In the case of each objection, however, the debtors sought an order sustaining their objection, striking the filed claim, and permitting the creditor an opportunity to file an amended claim within 30 days of the date of the Court's order. Accordingly, that is the relief to which the debtors are entitled. It should be noted that the debtors have also sought an award of fees against the non-responding creditors here. For the reasons articulated below, the Court denies that request.

### 2. The Claim of Retailers National Bank.

■ Rather than file a formal response to the debtors' objection to its claim, Retailers National Bank ("Retailers") filed an amendment to its Claim No. 9. As originally filed, Claim No. 9 is not entitled to *prima facie* validity because the only document attached to the claim form is a sum-

mary statement showing the account number and the total amount of the debt. The amended claim filed on January 26, 2004, is identical to Claim No. 9, except that it attaches a one-page "Summary of Exhibits and Certificate of Service" stating that an account summary and copies of certain billing statements are available upon request.

Because Retailers did not file a formal response to the debtors' objection and did not appear at the hearing, the Court made an oral ruling, later reflected in its Memorandum Decision on Objections to Claims dated April 13, 2004 ("Memorandum Decision"), that Retailers' claim ought to be disallowed because of its failure to provide supporting documentation and to formally respond to the debtors' objection. On June 3, 2004, nearly two months after issuance of the Court's Memorandum Decision, but prior to the entry of an order on Retailers' claims, Retailers filed a motion requesting the Court to reconsider its ruling based upon facts that were not brought to the attention of the Court at the time of the hearing.

In support of its request for reconsideration, Retailers submitted a declaration of Steven Kane, who states that he encountered problems while trying to upload the exhibits to the amended proof of claim using the Court's ECF system on January 20, 2004. He contacted the Court's ECF help desk and was advised to submit the amended claim electronically with just a summary of the debt and a reference that the supporting documents were available upon request. That same day, according to the declaration of Lawrence Kahn, counsel for Retailers, Mr. Kahn sent a letter to the debtors' counsel and to the Chapter 13 trustee that acknowledged receipt of the objection to Retailers' claim

and enclosed a copy of the amended claim with supporting documents attached, including three years of billing statements. Retailers believed that at that point it had satisfied the debtors' objection.

Counsel for the debtors admits that he received Retailers' January 20, 2004 letter with the amended claim and supporting documents, but because he was moving his office at the time, it appears he was not aware of these documents until the motion for reconsideration was filed. He contends that the letter did not relieve Retailers of its obligation to file the documents supporting the claim with the Court and to file a formal response to the claims objection prior to the scheduled hearing. He also points out that Retailers has not submitted a copy of the underlying credit agreement.

Retailers' motion requests reconsideration under Rule 60(b), Fed.R.Civ.P. (incorporated into the Bankruptcy Rules by Rule 9024). Rule 60(b)(6) permits the Court upon "terms as are just" to relieve a party from a "proceeding" for any "reason justifying relief...." Retailers' amended claim plus supporting materials consists of 21 pages, so it should not have been difficult to file using the Court's electronic filing system nor is it "voluminous" so as to justify filing only a summary.[2] Retailers could have filed the supporting documentation conventionally and asked that it be scanned and added to the Court's copy of the proof of claim. More importantly, without confirmation from the debtors' counsel that the supporting information supplied with Retailers' January 20 letter satisfied his concerns, Retailers should have filed a formal response to the debtors' objection to its claim.

**2.** Official Bankruptcy Form 10 (proof of claim form) states in paragraph 9 that "[i]f the documents are voluminous, attach a summary."

820

Because it appears that Retailers relied on advice from the Court's ECF help desk and because the debtors sought in their objection an order giving Retailers 30 days to file its supporting documents, that relief still seems appropriate under Rule 60(b)(6), Fed.R.Civ.P. Accordingly, the Court will enter an order giving Retailers 30 days from the date of the order to file the documents that support its claim, including billing statements and a copy of the credit agreement. That order, however, will include a requirement that Retailers reimburse the debtors' counsel for $500 in legal fees incurred in this matter, which could have been avoided had Retailers filed a simple response to the debtors' objection advising the Court of the matters in its motion for reconsideration.

For the reasons stated in Section C below, however, the debtors are not entitled to recover their attorneys' fees and costs in excess of $500 for prosecuting successfully their objection to the claims of Retailers.

### 3. The Claim of Citi Cards.

The debtors originally filed an objection to Claim No. 1, which was filed by Citi Cards and later assigned to eCast, on December 16, 2003. There was no response to the debtors' objection, so on January 2, 2004, an order was entered disallowing the claim. A second objection to the claim was filed on January 11, 2004. eCast has filed a response to the second objection. The order entered on January 4, 2004, disallowing Claim No. 1, is a final order which has not been appealed. Therefore, the second objection by the debtors is superfluous and the Court need not address the issues related to that claim.

### 4. The Claims of eCast, as Assignee.

 In its response, eCast has included additional documentation supporting Claim

Nos. 15 and 16. The original filed claims stated that they were based upon credit card debt and attached a one-page "Accounting Summary" showing the total amount sought. Exhibit E to eCast's response consists of redacted copies of statements from Walmart dated July 2002 through December 2002 relating to Claim No. 15. Those statements show a balance as of July 2002 of $1,075.29, less payments and credits, plus interest and late charges thereafter through December 2002, for a total debt of $1,266.57. This amount is slightly less than $1,291.57, which is the amount stated in the proof of claim.

eCast has submitted similar account statement information for Claim No. 16 as Exhibit F to its response. Exhibit F consists of account statements from JC Penny from July 2002 through December 2002. Although these statements are barely legible, they show a final balance due of $2,302.72, which is consistent with the proof of claim.

The Court has no trouble concluding that Claim Nos. 15 and 16, as originally filed, are not entitled to any *prima facie* validity—they were not supported by any documentation of the debt. eCast argues that the statements that have now been submitted, showing how the debts were calculated, should be sufficient "writings" for purposes of Rule 3001(c). Because the debtors cannot determine from those statements the legality of the charges that are included, the Court finds that these statements are not sufficient support for the claims.

Based upon the relief requested by the debtors in their objections, Claim Nos. 15 and 16 will be stricken and eCast will be given 30 days from the date of an order consistent with this ruling in which to file amended claims that include copies of the relevant credit agreements authorizing the charges shown on the account statements.

## C. The Right to Attorneys' Fees and Costs.

■ The debtors request that a judgment be entered against each of the creditors for the fees and costs incurred by their attorney in making the objections. eCast opposes the debtors' request, arguing that "[t]he American rule denies attorney's fees to a litigant in federal court in the absence of contract, applicable statute, or other exceptional circumstances...." *Richardson v. Alaska Airlines, Inc.*, 750 F.2d 763, 765 (9th Cir.1984). *See also In re Acequia, Inc.*, 34 F.3d 800 (9th Cir.1994) (Court refused to permit debtor's request for attorneys' fees for post-confirmation fraudulent conveyance suit against defendant, citing American Rule).

Under the American Rule, litigants in bankruptcy proceedings may recover their fees and costs incurred pre-petition that are provided for under a valid contract or applicable state law. Specific sections of the Bankruptcy Code also authorize creditors and debtors to recover their fees and costs incurred post-petition. *See, e.g.,* §§ 506(b), 362(h); Rule 9011. In addition, at least in the Ninth Circuit, creditors and debtors may have a right to recover post-petition fees and costs when they prevail in an action litigated in bankruptcy court that involves substantive issues under a contract providing for the recovery of attorneys' fees under state law. *See In re Baroff*, 105 F.3d 439 (9th Cir.1997)(Court holds that debtor is entitled to recover attorneys' fees under contract governed by California law where bankruptcy court applied California law to the dispute). Here, however, there is no evidence in the record of a contract giving either party a right to legal fees.

■ The debtors argue instead that the Court may use Section 105(a) to award them fees to enforce each creditor's compliance with the claims filing rules. That section authorizes a bankruptcy court to use its equitable power to issue any order that is necessary or appropriate to carry out the provisions of the Code. The Ninth Circuit Court of Appeals has held that a bankruptcy court may exercise its equitable power only as a means to fulfill some specific Code provision. *See, e.g., In re Saxman*, 325 F.3d 1168 (9th Cir.2003) (holding that a bankruptcy court is authorized to use Section 105 to partially discharge a student loan obligation consistent with the provisions of Section 523(a)(8)). *See also Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988) ("[W]hatever equitable powers remain in the bankruptcy court must and can only be exercised within the confines of the Bankruptcy Code."). The Ninth Circuit has affirmed the bankruptcy court's authority to enforce its orders and the Code and Rules by imposing a civil sanction, including an award of attorneys' fees and costs, *In re Dyer*, 322 F.3d 1178 (9th Cir.2003), but has rejected the notion that Section 105(a) is a catch-all private right of action for the enforcement of other Code sections. *Walls v. Wells Fargo Bank*, 276 F.3d 502, 506–507 (9th Cir. 2002).

The debtors in this case did not request sanctions, *per se*, nor did they comply with the requirements of Rule 9011 as part of the objection process. More importantly, the debtors have not proved that eCast or any of the other creditors violated a specific provision of the Code. It is true that each of the creditors failed to comply with Rule 3001(c), but the case law cited above holds that the remedy for non-compliance with that rule is to deny the claim *prima facie* effect under Section 502(a). The plain language of Section 502(a) permits a creditor to file a claim that is invalid on its face but that is deemed valid unless an interested party objects. Therefore, under

existing authority, the law permits the very process that has occurred in this case.

Accordingly, the debtors' request for an allowance of attorneys' fees and costs against each of the creditors must be denied.

## CONCLUSION

For the foregoing reasons, the Court will enter orders striking the claims of Key Bank, Asset Acceptance, Card Processing Center, FDS Bank–Bon Marche, eCast and Retailers, but giving these creditors 30 days from the date of the order to file amended claims that include sufficient documentation of the debt alleged to be owed. Counsel for the debtors is instructed to file orders consistent with this ruling.