**In re Jack Thomas KEMMER d/b/a Kemmer Flag Car Escort Service Peggy Diana Kemmer, Debtors.**

No. 03–34535.

United States Bankruptcy Court, E.D. Tennessee.

Sept. 15, 2004.

Richard M. Mayer, Esq., Landmark Center, Knoxville, TN, for Debtors.

Steven D. Lipsey, Esq., Stone & Hinds, P.C., Knoxville, TN, Natalie M. McGhee, Esq., Thomas A. Lee, III, Esq., Becket & Lee, LLP, Malvern, PA, for eCast Settlement Corporation.

Gwendolyn M. Kerney, Esq., Knoxville, TN, Chapter 13 Trustee.

## MEMORANDUM ON OBJECTIONS TO CLAIMS

RICHARD S. STAIR, JR., Bankruptcy Judge.

Before the court are the following nine (9) objections to claims filed by the Debtors on May 14, 2004:(1) Objection to the Claim of Fleet Bank (RI) NA and its Assigns by eCast Settlement Corporation; (2) Objection to the Claim of Discover Bank; (3) Objection to the Claim of Chase Manhattan Bank USA, by eCast Settlement Corporation; (4) Objection to the Claim of Sherman Acquisition, LP/Resurgent Capital Services; (5) Objection to the Claim of Bank One Delaware, N.A. f.k.a. First USA; (6) Objection to the Claim of Bank One Delaware, N.A. f.k.a. First USA; (7) Objection to the Claim of Chase Manhattan Bank USA, by eCast Settlement Corporation; (8) Objection to the Claim of eCast Settlement Corporation, Assignee of General Electric Private Label/Lowes/Retail; and (9) Objection to the Claim of Household Bank and its Assigns by eCast Settlement Corporation (collectively, Objections to Claims).[1] On June 24, 2004, eCast Settlement Corporation (eCast) filed the Response of eCast Settlement Corporation to Debtors' Objection to Claim (Response), asking the court to overrule the Debtors' Objections to Claims with regard to those claims assigned to it.

The facts and documents essential to the resolution of these matters are before the court upon the Objections to Claims, the Response, the Brief in Support of Debtor(s) Objections to Claims Filed by eCAST Settlement Corporation on August 13, 2004, and the Memorandum of Law in Support of eCAST Settlement Corpora-

---

1. The Debtor, Jack Thomas Kemmer, had two (2) credit cards issued by Bank One Delaware, N.A., and each Debtor had a separate credit card issued by Chase Manhattan Bank, USA.

tion's Response to Debtors' Objection to Proofs of Claim filed on August 27, 2004. The court has determined that the Objections to Claims raise questions of law and that an evidentiary hearing is therefore not required.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(B) (West 1993).

## I

On August 14, 2003, the Debtors filed the Voluntary Petition commencing their bankruptcy case under Chapter 13 of the Bankruptcy Code, together with their required statements and schedules. In their Schedule F—Creditors Holding Unsecured Nonpriority Claims, the Debtors listed numerous credit card accounts. On August 19, 2003, a Notice of Commencement of Case was issued by the clerk and mailed to creditors, fixing December 31, 2003, as the deadline for filing proofs of claim by nongovernmental entity creditors. The Debtors' Chapter 13 Plan, proposing bi-weekly payments of $283.00 for 60 months, with a dividend to unsecured creditors of 20–70%, was confirmed on January 8, 2004.

On May 14, 2004, the Debtors filed the Objections to Claims, asking the court to disallow in their entirety the following nonpriority unsecured claims: (1) Claim Number 15 in the amount of $9,098.83, filed on October 17, 2003, by eCast on behalf of Fleet Bank (RI) (Fleet); (2) Claim Number 14 in the amount of $5,800.32, filed on September 11, 2003, by Discover Bank (Discover); (3) Claim Number 10 in the amount of $7,163.01, filed on October 14, 2003, by eCast on behalf of Chase Manhattan Bank USA (Chase); (4) Claim Number 6 in the amount of $8,903.36, filed on October 14, 2003, by Sherman Acquisition, LP/Resurgent Capital Services (Sherman Acquisition); (5)

Claim Number 7 in the amount of $7,856.91, filed on September 23, 2003, by Bank One Delaware, N.A., f.k.a. First USA (Bank One); (6) Claim Number 8 in the amount of $10,307.64, filed on September 23, 2003, by Bank One; (7) Claim Number 9 in the amount of $4,765.96, filed on October 14, 2003, by eCast on behalf of Chase; (8) Claim Number 17 in the amount of $677.69, filed on November 3, 2003, by eCast on behalf of General Electric Private Label/Lowes/Retail (Lowe's); and (9) Claim Number 16 in the amount of $7,538.32, filed on October 6, 2003, by eCast on behalf of Household Bank (Household).[2] The Debtors ground their Objections to Claims solely upon the argument that each creditor failed to meet the requirements set forth in Rule 3001(c) of the Federal Rules of Bankruptcy Procedure, averring that "the claim was based on [a] writing and the original and/or duplicate was not contained with the claim. The claim has no paper writing."

With the exception of eCast, none of the creditors filed a formal response to the Debtors' Objections to Claims. Instead, following receipt of the Objections to Claims, Discover amended Claim No. 14 on June 1, 2004, attaching supporting documentation in the form of an account statement for July 2003. Similarly, Bank One filed an amendment to its Claim No. 8 on June 1, 2004, amending the amount to $10,582.38 and attaching copies of eight monthly statements in support thereof. It did not, however, amend its Claim No. 7, and Sherman Acquisition did not amend its Claim No. 4.

In its Response, eCast argues that the challenged Proofs of Claim do include attachments evidencing the respective claims in compliance with Federal Rule of Bankruptcy Procedure 3001(c), but in the event that the attachments do not comply, eCast

**2.** All references to the creditors collectively will be "Creditors."

requests an opportunity to amend the claims. The Response also includes statements regarding the Fleet account, Claim No. 15, and advises that additional documentation has been requested concerning the other claims assigned to eCast. Finally, eCast argues that the Debtors listed the accounts in their statements and schedules, constituting a judicial admission.

On June 30, 2004, the court held a preliminary hearing on the Debtors' Objections to Claims, and pursuant to an Order entered on July 2, 2004, eCast was given thirty days to amend its claims. The court also set forth a schedule for the Debtors and eCast to brief their respective arguments. Finally, the court sustained, without opposition, the Debtors' Objections regarding the Discover Bank, Bank One, and Sherman Acquisition claims, as those parties did not file responses. Orders disallowing those claims in their entirety were entered on July 8, 2004.

On July 16, 2004, the Chapter 13 Trustee (Trustee) filed two Motions to Reconsider Disallowance of Claim regarding the Discover and Sherman Acquisition claims. In support of her Motions, the Trustee argued that the Debtors' Objections to Claims were not initiated at the Debtors' request, were not grounded in fact, and were contrary to the spirit and intent of the Bankruptcy Code. The Trustee further averred that the claims met the requirements of Rule 3001 and were entitled a prima facie presumption of validity. Thereafter, on August 20, 2004, the court entered an Order vacating its July 8, 2004 Orders disallowing the claims filed by Discover and Sherman Acquisition, and on September 2, 2004, the court, sua sponte, entered an Order vacating its July 8, 2004 Orders disallowing the two Bank One claims. The Debtors' objections to all nine (9) claims were set on the court's September 15, 2004 afternoon docket, at which time counsel were advised that a ruling would be issued from the bench.[3]

## II

Upon the commencement of a bankruptcy case, the debtor must file statements and schedules, listing all assets, liabilities, creditors, co-debtors, income, expenses, and other pertinent financial and personal information. *See* 11 U.S.C.A. § 521 (West 1993); FED. R. BANKR. P. 1007. The Bankruptcy Code defines a creditor as "[an] entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C.A. § 101(10)(A) (West 1993). A claim is defined as "[a] right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]" 11 U.S.C.A. § 101(5)(A) (West 1993).

In any bankruptcy case, a debtor's creditors may file a proof of claim. 11 U.S.C.A. § 501(a) (West 1993). "[T]he proof of claim is the creditor's response to the information provided by the debtor in the debtor's schedules." OFF. FORM 10 (INSTRUCTIONS). "The purpose of the rules regarding claims is to require creditors to provide sufficient information so that a Debtor may identify the creditor and match the creditor and the amount of

---

**3.** The September 15, 2004 hearing also includes thirty-eight (38) other Chapter 13 cases encompassing eighty-six (86) objections filed by debtors identical to the Objections to Claims filed in the present case. In addition, two (2) more cases are set for September 29, 2004, where the Debtors have objected to a total of nine (9) claims on the same grounds. The court has now determined that it will not issue a bench opinion but will file this Memorandum which will control the disposition of all objections in the other forty (40) cases.

the claim with the claims scheduled by the Debtor." *In re Hughes,* 313 B.R. 205, 212 (Bankr.E.D.Mich. Aug.18, 2004).

■ Proofs of claim are governed primarily by Federal Rule of Bankruptcy Procedure 3001, which provides, in material part:

(a) Form and content

A proof of claim is a written statement setting forth a creditor's claim. A proof of claim shall conform substantially to the appropriate Official Form.

(b) Who may execute

A proof of claim shall be executed by the creditor or the creditor's authorized agent except as provided in Rules 3004 and 3005.

(c) Claim based on a writing

When a claim, or an interest in property of the debtor securing the claim, is based on a writing, the original or a duplicate shall be filed with the proof of claim. If the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim.

. . . .

(f) Evidentiary effect

A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim.

Fed. R. Bankr. P. 3001. In Chapter 13 cases, in order to participate in the claims distribution process, unsecured creditors must file proofs of claim. *See* Fed. R. Bankr. P. 3002(a) ("An unsecured creditor . . . must file a proof of claim or interest for the claim or interest to be allowed[.]").

■ "Official Form 10. Proof of Claim" (Official Form 10), as prescribed by the Judicial Conference of the United States, requires a creditor to provide the basis for the claim, the amount of the claim, any interest or other charges included, the secured or unsecured nature of the claim, and proof thereof in the form of supporting documentation, if necessary or available. *See* OFF. FORM 10. Additionally, proofs of claim must be signed by a party authorized to do so, under penalty of criminal prosecution for filing a false claim. *See* OFF. FORM 10. Pursuant to Federal Rule of Bankruptcy Procedure 9009, Official Form 10 may be altered as appropriate, as long as the necessary information is retained. Fed. R. Bankr. P. 9009. In essence, "[a] properly executed and filed proof of claim consists of (1) a creditor's name and address, (2) basis for claim, (3) date debt incurred, (4) amount of claim, (5) classification of claim, and (6) supporting documents." *Hughes,* 313 B.R. at 209 (citing *In re Dow Corning Corp.,* 250 B.R. 298, 321 (Bankr.E.D.Mich.2000)).

Bankruptcy Code § 502, entitled "Allowance of claims or interests," states that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C.A. § 502(a) (1993). If a party in interest files an objection, the court must determine the proper amount of the claim and allow it accordingly, unless the claim is unenforceable by law, is for unmatured interest, is taxed against property but exceeds the value of the property, is for services by an insider or attorney of the debtor that exceeds the reasonable value thereof, is for unmatured child support or maintenance, is for damages resulting from the termination of a lease or an employment contract which exceed statutory limits, results from late paid employment taxes, or the proof of claim was not timely filed. *See* 11 U.S.C.A. § 502(b)(1)—(9) (West 1993 &

Supp.2004). Pursuant to Federal Rule of Bankruptcy Procedure 3007, any objection must be in writing, filed with the court, and served on the claimant, the debtor, and the trustee.

■■■ Which creditors will share in the distribution of a Chapter 13 estate is determined through the claims allowance process. In order to achieve this goal in an efficient and timely manner, the relevant parties must meet minimum evidentiary standards.

The burden of proof for claims brought in the bankruptcy court under 11 U.S.C.A. § 502(a) rests on different parties at different times. Initially, the claimant must allege facts sufficient to support the claim. If the averments in his filed claim meet this standard of sufficiency, it is "prima facie" valid. In other words, a claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward. The burden of going forward then shifts to the objector to produce evidence sufficient to negate the prima facie validity of the filed claim. It is often said that the objector must produce evidence equal in force to the prima facie case. In practice, the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence. The burden of persuasion is always on the claimant.

*In re Allegheny Int'l, Inc.,* 954 F.2d 167, 173–74 (3d Cir.1992) (citations omitted); *see also In re Walsh,* 264 B.R. 482, 484 (Bankr.N.D.Ohio 2001) ("In an Objection to Claim, the objecting party bears the burden of disproving the claim by a preponderance of the evidence."); *Namer v. Sentinel Trust Co. (In re AVN Corp.),* 248 B.R. 540, 547 (Bankr.W.D.Tenn.2000) ("In order to enjoy the presumption of validity, a proof of claim must allege facts that would entitle the creditor to recovery.").

To negate the prima facie validity of a claim, an objection must: (1) assert in a writing filed with the Court that there is some reason the claimant does not have a right to payment; (2) sign the objection; (3) if appropriate, assert that the claim is in fact based on a writing and that the documentation attached to the claim is insufficient; and (4) come forward with some legal reason or some factual evidence to defeat the claim.

*In re Cluff,* 313 B.R. 323, 337 (Bankr. D.Utah Aug.23, 2004).

■■■ Nevertheless, "[f]ailing to attach the writing required by Bankruptcy Rule 3001(c) 'does not automatically invalidate the claim; it does, however, deprive the claim of *prima facie* validity under Bankruptcy Rule 3001(f).' " *Cluff,* 313 B.R. at 337 (quoting *State Bd. of Equalization v. Los Angeles Int'l Airport Hotel Assocs, (In re Los Angeles Int'l Airport Hotel Assocs.),* 196 B.R. 134, 139 (9th Cir. BAP 1996)). Without this presumption of validity, the burden of proving the existence and amount of the claim falls to the claimant; however, this initial burden is fulfilled by the presentation of any evidence of the claim. *Cluff,* 313 B.R. at 337–38. At that point, the objecting party is still required to present evidence that the claim is legally deficient. *Allegheny Int'l, Inc.,* 954 F.2d at 173–74; *Cluff,* 313 B.R. at 340 ("To overcome a proof of claim the Debtors must come forward with 'some evidence' to 'meet, overcome, or at least equalize' the statements on the proof of claim.") (quoting *In re All–Am. Auxiliary*

*Ass'n,* 95 B.R. 540, 545 (Bankr.S.D.Ohio 1989)).

■ The Objections at issue in this case are grounded exclusively upon a failure of the Creditors to attach sufficient documentation. As an initial matter, the Creditors' claims are based upon credit card and other commercial credit accounts, which clearly fall within the scope of claims based upon a writing. *See, e.g., Cluff,* 313 B.R. at 332–34 (noting that the Truth–in–Lending Act requires credit card agreements to be in writing and finding that the definition was broad enough to encompass both written and electronic transactions); *Hughes,* 313 B.R. at 210; *In re Henry,* 311 B.R. 813, 817 (Bankr. W.D.Wash.2004) ("A credit card debt is a debt based upon a writing[.]"). As such, pursuant to Rule 3001(c), the Creditors were required to attach to their proofs of claim either the original or a copy of the writings forming the basis of the claim.

The courts disagree somewhat, however, on what document actually forms the basis of a credit card or consumer credit claim. In *Henry,* the court found the credit card agreement to be the writing upon which that type of claim is based, a view that was endorsed by the *Hughes* court. *See Henry,* 311 B.R. at 817; *see also Hughes,* 313 B.R. at 210. In comparison, the *Cluff* court determined that

> it is not the underlying credit card agreement that creates the debt—for that only establishes a line of credit that defines the terms of the parties['] future transactions—it is the actual use of the line of credit that creates the obligation to repay. Each time a debtor uses a credit card, the debtor makes an implied representation of [his] intent to repay the debt.

*Cluff,* 313 B.R. at 334.

■ The determinations of both the *Henry* and *Cluff* courts are correct. In establishing a debtor's line of credit under a credit card or consumer credit account, the underlying agreement sets forth the terms and conditions upon which the account is based. It is true that the creation of the account itself does not create a debt upon which a claim may be based. However, once the debtor agrees to the terms and conditions set forth in the underlying agreement and draws against the line of credit, i.e., uses the card or account, and creates the actual debt, he is still bound by the terms and conditions of the underlying agreement. Accordingly, the court agrees that a claim for a credit card or consumer credit account is based upon both the underlying agreement creating the account *and* the actual transactions creating the debt under the account. As such, a proof of claim based upon a credit card or consumer credit account requires attachment of supporting documentation pursuant to Rule 3001(c).

Logically, the next question to be addressed is what type of documentation sufficiently satisfies the Rule 3001(c) requirement. As previously stated, the proof of claim is an Official Form that is sent to all creditors along with the Notice of Commencement of a debtor's bankruptcy case. Official Form 10 first addresses supporting documentation on the front of the form where creditors fill in the appropriate information, in conjunction with paragraph 4 concerning the total amount of the claim, instructing creditors to check a box "if claim includes interest or other charges in addition to the principal amount of the claim[, and to a]ttach itemized statement of all interest or additional charges." OFF. FORM 10.

The second reference to supporting documentation is also found on the front of Official Form 10, at paragraph 8, which directs creditors to:

Attach copies of supporting documents such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

Off. Form 10.

Finally, Official Form 10 discusses supporting documentation on the back of the form, within the Instructions, stating as follows:

8. Supporting Documents:
 You must attach to this proof of claim form copies of documents that show the debtor owes the debt claimed or, if the documents are too lengthy, a summary of those documents. If the documents are not available, you must attach an explanation of why they are not available.

Off. Form 10 (Instructions for Proof of Claim Form).

■ Requiring the creditor to attach supporting documentation allows the debtor to fully ascertain whether the creditor's claim is valid and for the appropriate amount, while at the same time, putting the initial burden of proof upon the creditor. Nevertheless, requiring the creditor to attach voluminous documentation to a proof of claim would put an unduly onerous burden upon the creditor, as well as the debtor and the Chapter 13 trustee, who would be required to sift through the produced documentation in assessing the claim's validity. Accordingly, Official Form 10 allows for attachment of a summary of the claim, which falls in line with Federal Rule of Evidence 1006, allowing voluminous documentation to be "presented in the form of a chart, summary, or calculation." Fed. R. Evid. 1006; *see also Cluff,*

313 B.R. at 335. The presentation of a summary, however, does not relieve the creditor of the responsibility to produce the actual documentation, irrespective of the volume thereof, if requested by the debtor or Chapter 13 trustee. *See* Fed. R. Evid. 1006 (stating that the original documents will be available for examination or copying); *Cluff,* 313 B.R. at 335–36.

■ In cases involving credit card or consumer credit accounts where interest and/or late charges are allowed and charged, in order for a proof of claim to be entitled to prima facie status, the creditor must attach sufficient documentation regarding the validity of the debt, in addition to supplying information concerning the inclusion of any additional interest charges, late fees, or attorney's fees. In order to meet these requirements, the *Cluff* court set forth the following guidelines:

> To provide parties with sufficient information to ascertain the basis and accuracy of the creditor's claim, the summary attached to the proof of claim should: (i) include the amount of the debts; (ii) indicate the name and account number of the debtor; (iii) be in the form of a business record of some other equally reliable format; and (iv) if the claim includes charges such as interest, late fees and attorney's fees, the summary must include a statement giving a breakdown of those elements.

*Cluff,* 313 B.R. at 335 (footnotes omitted).

Following these guidelines, the court determined that attaching a copy of the debtor's monthly credit card statement, evidencing "the total amount of the accrued debts, the name and account number of the debtor, [in addition to] the minimum payment due, previous balance, finance charge, interest rate, and any purchases or cash advances during the billing cycle ...

fulfills all of the requirements of Bankruptcy Rule 3001." *Cluff*, 313 B.R. at 336 (footnote omitted). Conversely, the court found that a summary including only the debtor's name, account number, previous balance, current payment due, recent purchases, and a remaining balance, without providing information regarding the interest rate, any late charges, or additional fees was not entitled to the prima facie presumption. *See Cluff*, 313 B.R. at 338.

The *Henry* court likewise found that a credit card company's monthly statement provided the information required by Rule 3001 and Official Form 10. The court held that one statement, however, would not suffice, stating that in order for a proof of claim to be allowed, "a creditor must, at a minimum, provide debtors with ... (i) a sufficient number of monthly account statements to show how the total amount asserted has been calculated, and (ii) a copy of the agreement authorizing the charges and fees included in the claim." *Henry*, 311 B.R. at 817–18.

 A credit card or consumer credit account creditor that attaches to its proof of claim a copy of the monthly statement generated for the debtor's account or a computer-generated statement of the debtor's account at the time of the bankruptcy filing will be entitled to prima facie status, as long as the statement evidences the debtor's name, account number, account balance as of the date of the bankruptcy filing, previous balance, finance or other charges for that period, and the annual percentage rate charged on the account. It is not necessary, however, for the creditor to attach a copy of the actual account agreement, as the court recognizes that credit card and consumer credit accounts are initially opened by virtue of these account agreements, whereby the creditor may charge interest on any outstanding balance, in addition to late fees, over-the-limit fees, cash advance fees, and the like.

 The failure to attach a monthly account statement or a similar computer-generated account summary, evidencing the required account information, will result in the loss of the creditor's prima facie presumption of validity. This does not, however, automatically result in disallowance based upon a groundless objection. Instead, as long as the creditor has presented some evidence to substantiate the claim, the objecting party must have a basis for challenging the validity of the claim. This is especially true when a debtor has included the claim in his statements and schedules, and the only basis for the objection is insufficient documentation. *See Cluff*, 313 B.R. at 339–40 (finding that listing a debt in one's statements and schedules, which have been executed under penalty of perjury, constitutes a party-opponent admission under Federal Rule of Evidence 801(d)(2) and must be rebutted with probative evidence that the listed claims are not actually owed).

### III

 In this case, based upon the findings herein, the following claims are entitled to prima facie status: (1) Claim No. 15 filed by eCast on behalf of Fleet; (2) Claim No. 8 filed by Bank One, as amended; and (3) Claim No. 14 filed by Discover, as amended. The remaining claims do not include summaries entitling them to the prima facie presumption; however, the documents attached thereto do set forth some amount of evidence as to the existence of the respective claims. Therefore, under either scenario, the Debtors are required to provide the court with at least some evidence to challenge the legal sufficiency of the various claims. Instead, the Debtors have objected to each of the Creditors' claims, offering as the only basis that

the claim required a writing that was not attached. The Debtors do not dispute the existence of the Creditors' claims, and in fact, with the exception of Claim No. 6 filed by Resurgent Capital Services in the amount of $8,903.36,[4] they listed the Creditors' claims in their statements and schedules. Likewise, the Debtors do not challenge the amounts of the claims which, with the exception of the Resurgent Capital Services claim,[5] are filed in amounts substantially identical with the amounts scheduled by the Debtors for each claim in Schedule F—Creditors Holding Nonpriority Unsecured Claims filed with their Voluntary Petition.[6] The only argument in support of the Debtors' Objections to Claims is that the Creditors' failure to attach documentation to the otherwise valid claims should result in the disallowance of these claims in their entirety.

Acceptance of the Debtors' argument would result in a windfall to the Debtors, requiring the court to find that Rule 3001(c) interposes a non-statutory ground by which it may disallow claims. Moreover, the Debtors' argument is incorrect, because each of the objected-to claims do have some documentation attached to evidence the respective debts, requiring the Debtors to then offer evidence to rebut the validity of the claim. The Debtors' Objections to Claims do not meet this requirement, irrespective of whether the claims were entitled to the presumption of prima facie validity based upon the actual documents provided with the claims by the Creditors.

Based upon the foregoing analysis, the court will not interpret Federal Rule of Bankruptcy Procedure 3001(c) in the manner suggested by the Debtors. Because the Debtors have not met their burden of proof by challenging the actual validity and legal sufficiency of the debts owed to the Creditors, their Objections to Claims shall be overruled.

An order consistent with this Memorandum will be entered.

### ORDER

For the reasons set forth in the Memorandum on Objections to Claims filed this date, the court directs that the Debtors' objections filed May 14, 2004, to the allowance of Claim Number 15 in the amount of $9,098.83, filed on October 17, 2003, by eCast Settlement Corporation on behalf of Fleet Bank (RI) NA; Claim Number 14 in the amount of $5,800.32, filed on September 11, 2003, by Discover Bank; Claim Number 10 in the amount of $7,163.01, filed on October 14, 2003, by eCast Settlement Corporation on behalf of Chase Manhattan Bank USA; Claim Number 6 in the amount of $8,903.36, filed on October 14, 2003, by Sherman Acquisition, LP/Resurgent Capital Services; Claim Number 7 in

---

4. Resurgent Capital Services is not scheduled by the Debtors as a nonpriority unsecured creditor. On its claim, this creditor lists the Debtor Jack Kemmer as the "Borrower," lists a credit card account number, and states that the "Previous Creditor" was Citibank, N.A. The Debtors did schedule "Citi Cards" as a creditor with a different account number, but they did not schedule Citibank, N.A., as a creditor.

5. See supra n. 4.

6. The Fleet claim filed in the amount of $9,098.83 was scheduled at $8,700.00; the Discover claim filed in the amount of $5,800.32 was scheduled at $5,800.00; the Chase claims filed in the amounts of $7,163.01 and $4,765.96 were scheduled at $7,200.00 and $4,500.00, respectively; the Bank One claims filed in the amounts of $7,856.91 and $10,307.64 were scheduled at $7,900.00 and $10,500.00, respectively; the Lowe's claim filed in the amount of $677.69 was scheduled at $600.00; and the Household claim filed in the amount of $7,538.32 was scheduled at $7,600.00.

the amount of $7,856.91, filed on September 23, 2003, by Bank One Delaware, N.A., f.k.a. First USA; Claim Number 8 in the amount of $10,307.64, filed on September 23, 2003, by Bank One Delaware, N.A., f.k.a. First USA; Claim Number 9 in the amount of $4,765.96, filed on October 14, 2003, by eCast Settlement Corporation on behalf of Chase Manhattan Bank USA; Claim Number 17 in the amount of $677.69, filed on November 3, 2003, by eCast Settlement Corporation on behalf of General Electric Private Label/Lowes/Retail; and Claim Number 16 in the amount of $7,538.32, filed on October 6, 2003, by eCast Settlement Corporation on behalf of Household Bank and its assigns, are OVERRULED. These claims are allowed as nonpriority unsecured claims in the amounts filed.

SO ORDERED.