**In re James C. CROWE and Joy K. Crowe, Debtors.**

No. 02–21809.

United States Bankruptcy Court, W.D. Washington, at Seattle.

Jan. 18, 2005.

Mark C. McClure, Kent, WA, for Debtors.

## MEMORANDUM DECISION AND ORDER ON OBJECTIONS TO CLAIMS

KAREN A. OVERSTREET, Bankruptcy Judge.

This matter came before the Court on the debtors' objections to ten proofs of claim filed in the above case. These objections were filed on November 4, 2004, and were directed at nearly every unsecured claim filed in the case. Two creditors, eCAST Settlement Corporation ("eCast")[1] and B–Line, LLC,[2] responded to the debtors' objections. The debtors promptly withdrew their objections to the claims of eCast and B–Line, LLC, so those claims are not at issue here.[3] As to each of the five remaining claims objections, the debtors submitted a declaration of no response and a proposed order disallowing the claim on the ground that no response to the objection had been filed. The proposed orders bar each creditor from filing any supplemental claim, but insulate each creditor from having to return any payments already made to them by the Chapter 13 trustee under the debtors' confirmed Chapter 13 plan. For the following reasons, the Court will deny the debtors' request to disallow these claims, with one exception.

## I. BACKGROUND

The debtors commenced this case under Chapter 13 of the Bankruptcy Code[4] on September 27, 2002, and confirmed their Amended Chapter 13 plan on December 6, 2002. The confirmed plan states that the anticipated dividend to unsecured creditors will be 74% of the amount of their claims based upon a liquidation analysis showing $23,380.23 in funds available for unsecured creditors. On May 2, 2003, the Chapter 13 trustee filed his Report of Filed Claims, showing every claim filed in the case as of that date. Subsequent to plan confirmation, the debtors filed no claims objections until those at issue here were filed.

On October 28, 2004, the debtors filed a Motion to Borrow/Incur Indebtedness to refinance the deeds of trust on their principal residence and pay off the confirmed plan. The proposed closing statement attached to the motion showed that the debtors would receive $21,293 from the refinance, which sum was to be paid to the Chapter 13 trustee. The motion recited that the refinance would enable the debtors to increase the dividend to unsecured creditors to 100% of those claims. The Court approved the Motion to Borrow, the refinance was completed, and the proceeds were paid to the Chapter 13 trustee. Six days after the Court approved the refinance, the debtors filed objections to all

---

1. eCast responded as the assignee of Sears Roebuck & Co. (Claim No. 2), MBNA America Bank, N.S. (Claim No. 6), JC Penney (Claim No. 8), and Home Depot (Claim No. 12).

2. B–Line, LLC responded as assignee of Bank One Delaware, f.k.a. First U.S.A. (Claim No. 13).

3. In addition, counsel for the debtors reduced his fee application by $250 for each claims objection that was withdrawn. *See* Declaration of No Objection filed December 14, 2004.

4. Unless otherwise indicated, all Chapter, Section and Rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* and to the Federal Rules of Bankruptcy Procedure, Rules 1001 *et seq.*

but two of the unsecured claims filed in their case. The two claims to which the debtors did not object total $434.78.

eCast filed a lengthy response to the objections on the grounds that the objections were untimely, that the claims complied with the requirements of Bankruptcy Rule 3001(c), and that the claims should be allowed pursuant to Section 502(b). Although in response to eCast's submission the debtors promptly withdrew their objections to eCast's claims, the Court has considered the response filed by eCast and its request that the Court clarify its decision in *In re Henry,* 311 B.R. 813 (Bankr. W.D.Wash.2004).

## II. DISCUSSION

### A. Clarification and Limits of *Henry.*

This Court issued the *Henry* decision in an effort to establish reasonable and cost-effective guidelines for dealing with small proofs of claim, including credit card claims, in Chapter 13 cases. The hope was that by requiring creditors with small claims to comply with Bankruptcy Rule 3001(c) through a relatively minimal production of documents in support of their claims, the burden on debtors to verify the accuracy of those claims would be lessened and fewer costs would be incurred overall by both creditors and debtors in the allowance process. Subsequent to *Henry,* however, reported cases describe creditors who fight with even more zeal to avoid having to file even minimal support for their claims and debtors who have taken up *Henry* as a sword to disallow perfectly legitimate unsecured claims when there is no reasonable justification for disputing the claims. Now, courts around the country struggle with time-consuming litigation over issues that should be subject to reasonable resolution by the parties involved. *See, e.g., Dove–Nation v. eCast Settlement Corp.,* 318 B.R. 147 (8th Cir. BAP 2004);

*In re Blue,* 2004 WL 1745786 (N.D.Ill. 2004); *In re Mazzoni,* 318 B.R. 576 (Bankr.D.Kan.2004); *In re Cluff,* 313 B.R. 323 (Bankr.D.Utah 2004); *In re Hughes,* 313 B.R. 205 (Bankr.E.D.Mich.2004); *In re Kemmer,* 315 B.R. 706 (Bankr.E.D.Tenn. 2004); *In re Shank,* 315 B.R. 799 (Bankr. N.D.Ga.2004). This case is a good example of *Henry* run amok, and the Court writes for the purpose of slowing the stampede.

In *Henry,* this Court held that the failure to comply with Rule 3001(c) by attaching the writing upon which the claim is based negates the *prima facie* validity of the claim under Bankruptcy Code § 502(a). *See In re Consolidated Pioneer Mortgage,* 178 B.R. 222, 226 (9th Cir. BAP 1995); *In re Stoecker,* 143 B.R. 879, 883 (N.D.Ill.1992); *In re Petrich,* 43 F.2d 435, 437 (S.D.Cal.1930); *In re Lindell Drop Forge Co.,* 111 B.R. 137, 142–43 (Bankr. W.D.Mich.1990). This Court also held that a credit card debt is a claim based upon a writing and that to maintain *prima facie* validity, a creditor should attach to its proof of claim form or file in response to a claims objection (i) a sufficient number of monthly account statements to show how the total amount asserted has been calculated, and (ii) a copy of the agreement authorizing the charges and fees included in the claim. Finally, this Court held in *Henry* that in the absence of that minimum evidentiary presentation, the creditor's claim could be disallowed. In *Henry,* each of the creditors was given an opportunity to amend its claim by submitting additional documentation.

In this case, each of the debtors' objections states:

YOU MAY AVOID THIS HEARING by providing (1) a minimum of 12 months of account statements from the debtor's alleged account, (2) a copy of the contract

obligating the debtor to [the creditor], (3) proof of a valid assignment (if applicable), and (4) evidence of compliance with the Truth in Lending Act, 16[15] U.S.C. § 1692 (a signed application by the debtor), PRIOR to the response date indicated below.

This statement requires significantly more than the Court required in *Henry.* Nothing in *Henry* requires a creditor to attach to its proof of claim 12 months of account statements, nor does *Henry* require a creditor to submit proof that it has complied with the Truth in Lending Act.

Further, nothing in *Henry* eliminated a creditor's right to submit a summary of the debt when the documentation supporting the debt is voluminous. Paragraph 9 of Bankruptcy Official Form 10 (04/04)(Proof of Claim Form) advises creditors to "Attach copies of supporting documents" and further that "[i]f the documents are voluminous, attach a summary." The instructions for completing the proof of claim form provide additional advice to creditors:

> Creditors must attach to the proof of claim form copies of any documents showing that the debtor owes the debt claimed or, if the documents are too lengthy, a summary of those documents....It is essential that a creditor include all documents relating to the claim, not just those that fit the categories provided in this section of the form. For some claims, a simple statement of account may be enough. Other claims may require extensive documentation.

It is difficult to see how the process could be simpler, yet the controversy over small claims continues.

■ Decisions rendered after *Henry* affirm that a creditor may attach a summary where supporting documents are voluminous. *In re Kemmer,* 315 B.R. at 715; *In re Dove–Nation,* 318 B.R. at 151. In *In re Cluff,* the court even articulated guidelines for the form of the summary: (i) it should include the amount of the debt(s), (ii) it should identify the name and account number of the debtor, (iii) it should be in the form of a business record or some other equally reliable format, and (iv) if the claim includes charges such as interest, late fees and attorneys' fees, the summary should break down each of those charges by category. *Cluff,* 313 B.R. at 335. The filing of a summary, however, does not relieve a creditor of its obligation to provide all documents supporting the claim to the debtor upon request. *In re Shank,* 315 B.R. at 816; *In re Kemmer,* 315 B.R. at 715; *In re Cluff,* 313 B.R. at 335–36. Nor does the filing of a summary negate the requirement that a creditor check the box in paragraph 4 of the proof of claim form if the claim includes interest or other charges in addition to the principal amount of the claim and to attach, if applicable, an "itemized statement of all interest or additional charges."

■ The Court has not reviewed each claim at issue in this case to determine if a proper summary or documentation complying with *Henry* has been filed because this Court concludes that the claims objections filed by the debtors should be denied as untimely.

## B. Application of *Henry* to the Facts.

The Court must determine the debtors' objections to the following claims:

| Creditor | Claim No. | Amount | Date Filed |
|---|---|---|---|
| First National Bank of Omaha | 9 | $2,031.35 | 10/16/02 |
| First North American Bank | 1 | $1,026.72 | 10/10/02 |
| Providian National Bank | 5 | $4,692.26 | 10/17/02 |
| Qualstar Credit Union | 15 | $3,453.44 | 1/15/03 |
| Citifinancial | 16 | $3,143.71 | 3/10/03 |

These claims were filed more than a year before *Henry* was even issued. Several of the proof of claim forms used are an earlier version of Official Bankruptcy Form No. 10 and do not include any box in paragraph 4 to check regarding interest and fees, and there is no paragraph 9 or any reference to attaching supporting documents or a summary. With the sole exception of the Qualstar claim, the debtors actually scheduled the claims in an amount in excess of the amounts stated in the creditors' proofs of claim. None of the claims are listed as disputed in the schedules.[5]

The debtors' sole objection to the claims of First National Bank of Omaha, First North American Bank, Providian National Bank, and Qualstar Credit Union is that the claims do not comply with *Henry*. The Court concludes that on the facts of this case, the debtors' objections are untimely. The Chapter 13 Trustee's Report of Filed Claims, showing each of these claims, was entered on May 2, 2003, and was served on the debtors. A statement in that report clearly advises the debtors that their objection to any of the claims had to be filed within 90 days after May 2, 2003.[6] Accordingly, the time to object to the claims has passed and the debtors have offered no reason why the claims objections at issue were filed nearly two years after plan confirmation and more than a year after expiration of the deadline for claims objections.

The debtors have raised a legitimate objection under Bankruptcy Code § 502(b) to Claim No. 16 of Citifinancial. That claim was filed after the bar date. 11 U.S.C. § 502(b)(9). In the case of a late filed claim, our local rules put the burden on the creditor to move for allowance of the claim within 20 days after the Chapter 13 Trustee's Report of Filed Claims is entered.[7] Citifinancial failed to comply with that rule and to respond to the debtors' objection to the claim. Without resolving the question of whether a late-filed claim should be allowed in a Chapter 13 proceeding, *see In re Gullatt*, 169 B.R. 385 (M.D.Tenn.1994), the Court will disallow the Citifinancial claim because the creditor failed to comply with the local rules and to respond to the debtors' substantive objection.

## CONCLUSION

The debtors sought and received court approval to pay all of their creditors in full by refinancing their home. With the prospect of refinanced equity in their home, the debtors then sought to avoid payment to all but two of their unsecured creditors through form objections that are untimely and which seek to impose on each creditor a burden not imposed by *Henry*. Having represented to creditors in their motion for authority to refinance their home that the purpose was to complete the plan and pay creditors in full, the debtors should do just that: pay creditors in full. Accordingly, the Court will disallow the claim of Citifinancial and will deny the debtors' objections to the remaining four claims.

While the attempt through *Henry* to simplify the small claims process before this Court appears to have failed, the

---

5. Instead, each of the claims is listed as "unliquidated," which clearly they are not.

6. *See* Local Rule 3007–1(b)(i), W.D. Wash. Bankr.(establishing a 90 day deadline for the filing of claims objections in the absence of a showing of good cause).

7. Local Rule 3007–1(b)(ii), W.D. Wash. Bankr.(requiring a motion to allow a late filed claim within 20 days after notice from the Chapter 13 trustee).

Court has the continued expectation that both debtors and creditors will act reasonably in that process. Creditors should be mindful that their claims are signed under penalty of criminal sanctions and should take seriously the requirement that they have sufficient proof of what is owed by a debtor and how the debt is calculated. Debtors should file objections to claims when they have a legitimate quarrel with the existence or amount of the debt and when the attorneys' fees to be incurred in the process do not exceed the amount of the dividend to be saved if the objections are successful. If these obligations are ignored by the parties, the cost of the small claims process in Chapter 13 cases will continue to be a burden on the system and will reduce the overall distributions to creditors.

### ORDER

For the foregoing reasons, it is hereby ORDERED that the debtors' objections to the claims of First National Bank of Omaha (Claim No. 9), First North American Bank (Claim No. 1), Providian National Bank (Claim No. 5), and Qualstar Credit Union (Claim No. 15) are DENIED. The debtors' objection to the claim of Citifinancial (Claim No. 16) is sustained and that claim is DISALLOWED.