**In re Shirley RELFORD, Debtor.**

**Bankruptcy No. 03–22614–JKC–13.**

United States Bankruptcy Court,
S.D. Indiana,
Indianapolis Division.

Dec. 3, 2004.

Order Granting Reconsideration
April 18, 2005.

Amended Order Granting Reconsideration
April 26, 2005.

Ronald J. Moore, UAW Legal Services Plans, Indianapolis, IN, for Shirley Relford, Debtor.

Karl T. Ryan, Belcher & Ryan, Indianapolis, IN, for Ecast Settlement Corp., Creditor.

## ORDER ON DEBTOR'S OBJECTION TO CREDITOR ECAST SETTLEMENT CORPORATION'S PROOF OF CLAIM

JAMES K. COACHYS, Bankruptcy Judge.

This matter came before the Court on the Shirley Relford's (the "Debtor") Objection to eCast Settlement Corporation's ("eCast") Proof of Claim. The Court, having reviewed the parties' respective briefs, now issues the following Order, wherein it finds eCast's Proof of Claim to be deficient

but, nevertheless, denies the Debtor's request to disallow it. ECast is, instead, given 30 days to file an amended claim to cure the defects described below.[1]

### Facts

On December 2, 2003, the Debtor commenced a case under Chapter 13 of the United States Bankruptcy Code. On Schedule F, she listed unsecured credit card indebtedness to J.C. Penney, under account number 4245548861, in the amount of $800.00. The debt was not listed as either "contingent, unliquidated or disputed."

On February 9, 2004, eCast filed a claim in the amount of $771.14, "as assignee of General Electric/JCP Consumer" (the "Claim"). On the Claim itself, eCast altered the Official Form to provide the following:

> Itemized monthly statements of account were mailed to the debtor pre-petition; claimant maintains copies of said statements on microfilm or image processing and reproduction of same absent a dispute as to the balance would be unduly time consuming and burdensome; nevertheless, where an interested party so requests, claimant will search its records to provide copies of said month[ly] accounts statements. To request further documentation please call Becket and Lee LLP at 1–800–962–6030 and ask to speak to the Claims Servicing Supervisor. Claim may include contractual interest and/or late charges.

The "Account Summary" attached to the Claim states that eCast is the assignee of General Electric/JCP Consumer and that the Debtor owes $771.14 on Account Number * * * * * * * * * * *5886.[2]

The Debtor objected to the Claim, arguing that neither it, nor the Account Summary, provided "the cardholder agreement, an account history, a record of charges and payments, or any other documentation supporting the amount it claims against the estate." She also took issue with the fact that the Claim did not itemize interest and other charges as required, or provide sufficient proof of the purported assignment between J.C. Penney and eCast.

### Discussion and Decision

A claim is defined by the United States Bankruptcy Code (the "Code") as a "right to payment ... or to an equitable remedy." 11 U.S.C. § 101(5). Code § 501(a) provides that a creditor holding a claim may file a proof of claim, the allowance of which is governed by Code § 502. A proof of claim is a "written statement setting forth a creditor's claim." Bankruptcy Rule 3001(c) provides that when a creditor's claim is based on a writing, the original or a duplicate of the writing must be filed with the proof of claim unless it has been lost or destroyed, in which event a statement of the circumstances of the loss or destruction must be filed with the claim. Proofs of claim must also "conform substantially" to Official Form 10. Fed. R.Bankr.P. 3001(a); *see also* Fed. R.Bankr.P. 9009 (requiring that Official Forms "be observed and used with alterations as may be appropriate."). Official Form 10 instructs the claimant to attach "copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mort-

---

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

2. The last four digits of the account number are different than the account number shown by the Debtor on Schedule F of her petition. She does not take issue with that, however.

gages, security agreements, and evidence of perfection of liens," to explain if such documents are not available and to attach a summary if the documents are voluminous. The Official Form also requires the claimant to specify whether the claim includes "any interest or other charges in addition to the principal amount of the claim" and to attach an "itemized statement of all interest or additional charges."

■■■■ A claimant bears the ultimate burden of establishing the validity and amount of its claim by a preponderance of the evidence. A proof of claim executed and filed in accordance with Rule 3001 is "*prima facie* evidence of the validity and the amount of the claim." Fed.R.Bankr.P. 3001(f); *In re Stoecker,* 5 F.3d 1022, 1028 (7th Cir.1993). A party objecting to such a claim has the initial burden of presenting evidence to refute the claim. However, when a proof of claim fails to comply with Rule 3001, the claimant cannot rest on its proof of claim but must come forward with sufficient evidence of the claim's validity and amount. *See Stoecker,* 5 F.3d at 1028.

Under § 502 of the Code, "a claim ... is deemed allowed, unless a party in interest ... objects." If a party in interest files an objection, the court must determine the proper amount of the claim and allow it accordingly, unless the claim is unenforceable by law, is for unmatured interest, is taxed against property but exceeds the value of such property, is for services by an insider or attorney of the debtor that exceeds the reasonable value thereof, is for unmatured child support or maintenance, is for damages resulting from the termination of a lease or an employment contract which exceed statutory limits, results from late-paid employment taxes, or the proof of claim was not timely filed. *See* 11 U.S.C. § 502(b)(1)-(9). Pursuant to Fed. R.Bankr.P. 3007, objections to claims must be in writing, filed with the court, and served on the claimant, the debtor and the trustee.

■■■■ The Court begins its analysis with the Rule 3001(c)'s "writing" requirement. Courts agree that a claim for credit card debt is "based on a writing" and that it must, therefore, include such writing or a duplicate thereof. *See In re Cluff,* 313 B.R. 323, 332–34 (Bankr.D.Utah 2004); *In re Hughes,* 313 B.R. 205, 210 (Bankr. E.D.Mich.2004); *In re Henry,* 311 B.R. 813, 817 (Bankr.W.D.Wash.2004). They disagree, however, as to what document actually forms the basis of a credit card or consumer credit claim. For instance, the court in *Henry* held that a credit card or consumer credit claim is based on the credit card agreement. *Henry,* 311 B.R. at 817; *see also Hughes,* 313 B.R. at 210 (citing *Henry*). In contrast, the court in *Cluff* held that "it is not the underlying credit card agreement that creates the debt-for that only establishes a line of credit that defines the terms of the parties' future transactions-it is the actual use of the line of credit that creates the obligation to repay...." *Cluff,* 313 B.R. at 334.

This Court agrees with neither and both of these cases. As explained by the bankruptcy court in *In re Kemmer,* 315 B.R. 706, 714 (Bankr.E.D.Tenn.2004):

> The determinations of both the *Henry* and *Cluff* courts are correct. In establishing a debtor's line of credit under a credit card or consumer credit account, the underlying agreement sets forth the terms and conditions upon which the account is based. It is true that the creation of the account itself does not create a debt upon which a claim may be based. However, once the debtor agrees to the terms and conditions set forth in the underlying agreement and draws against the line of credit, i.e., uses the card or account, and creates the

actual debt, he is still bound by the terms and conditions of the underlying agreement. Accordingly, the court agrees that a claim for a credit card or consumer credit account is based upon both the underlying agreement creating the account *and* the actual transactions creating the debt under the account.

As in *Kemmer*, the Court finds that a credit card or consumer credit claim is based on both the credit card agreement and proof of the credit card's actual use. Accordingly, a claim for such debt must include the parties' credit agreement (and any amendments thereto), as well as evidence regarding the debtor's use of the credit card or consumer account.[3] With respect to the latter, what documentation will suffice?

■ According to Official Form 10, a claimant "must attach ... copies of documents that show the debtor owes the debt claimed or, if the documents are too lengthy, a summary of those documents. If the documents are not available, [the claimant] must attach an explanation as to why they are not available." As explained in *Kemmer*:

> Requiring the creditor to attach supporting documentation allows the debtor to fully ascertain whether the creditor's claim is valid and for the appropriate amount, while at the same time, putting the initial burden of proof upon the creditor. Nevertheless, requiring the creditor to attach voluminous documen-

tation to a proof of claim would put an unduly onerous burden upon the creditor, as well as the debtor and the Chapter 13 trustee, who would be required to sift through the produced documentation in assessing the claim's validity. Accordingly, Official Form 10 allows for attachment of a summary of the claim, which falls in line with Federal Rule of Evidence 1006, allowing voluminous documentation to be "presented" in the form of a chart, summary, or calculation. The presentation of a summary, however, does not relieve the creditor of the responsibility to produce the actual documentation, irrespective of the volume thereof, if requested by the debtor or Chapter 13 trustee.

*Id.* at 715 (internal citations omitted). A summary is also not a substitute for lost documents. "If, for example, a charged off debt is assigned to a collector who does not have the underlying documents, that fact must be disclosed in the claim and not merely hidden in the guise of attaching a summary." *Cluff*, 313 B.R. at 336.

■ The Court agrees that a summary of the debtor's use of the credit card will generally suffice. At a minimum, it must set forth the amount of the debt, the name and account number of the debtor, account balance as of the petition date and a breakdown of interest, late fees and attorney fees if the debt includes such charges. See *id.* at 335. It must also be

---

**3.** Despite finding that the credit card agreement is part of the writing on which a credit card claim is based, the court in *Kemmer* went on to hold that it need not be included with the claim, explaining:

> It is not necessary, however, for the creditor to attach a copy of the actual account agreement as the court recognizes that credit card and consumer credit accounts are initially opened by virtue of these account agreements, whereby the creditor

may charge interest on any outstanding balance, in addition to late fees, over-the-limit fees, cash advance fees, and the like.

*Kemmer*, 315 B.R. at 716. The Court does not understand this reasoning. If the credit agreement is part of the writing, then it must be included in the claim. What the Court knows or can assume about what the typical credit card agreement contains is irrelevant for purposes of Rule 3001.

in the form of a business record or some other equally reliable format. *Id.*

Here, eCast's Claim is deficient in that the Debtor's credit card agreement with J.C. Penney is not attached. It is also deficient in that the attached Account Summary does not provide a breakdown of the Debtor's account balance into pre-petition interest and principal. Additionally, if the balance includes any other fees, those fees are not specified.

Pursuant to Rule 3001(e)(2),[4] the Court also takes issue with the "evidence" attached to the Claim of the purported assignment J.C. Penney and eCast. The Bill of Sale attached to the Claim provides:

> For value received and in further consideration of the mutual covenants and conditions set forth in the Forward Flow Receivables Purchase Agreement (the "Agreement") dated as of June 24, 2002, by and between Monogram Credit Card Bank of Georgia, Montgomery Ward Credit Corporation, GE Capital Financial Inc., General Electric Capital Corporation (each, a "Seller"), and eCast Settlement Corporation ("Buyer"), upon each Transfer Date (as defined in the Agreement) Seller hereby transfers, sells, conveys, grants, and delivers to Buyer, without recourse except as set forth in the Agreement, to the extent of its ownership, the Receivables as set forth in the Notification File (as defined in the Agreement), delivered by Seller to Buyer on such Transfer Date, and as further described in the Agreement.

Given this language, the Court can conclude that certain credit card receivables were assigned to eCast. The Bill of Sale does not, however, establish that the subject claim was included in that assignment.

Additionally, the Bill of Sale does not establish a contractual relationship between any of the "Sellers" indicated above and *J.C. Penney*. The Debtor's credit card agreement with J.C. Penney probably establishes that relationship, but without evidence of the agreement, the Court cannot conclude that eCast is the holder of the Claim.

ECast has not complied with Rule 3001's requirements and is, therefore, not entitled to the presumption that the Claim is valid. This does not mean, however, that the Claim should be disallowed as requested by the Debtor. According to the Seventh Circuit, compliance with Rule 3001 is not "mandatory":

> All that [Rule 3001] says, so far as bears on this case, is that the filing of a proof of claim with the required documentation is prima facie evidence that the claim is valid. Fed.R.Bankr.P. 3001(c), (d), (f). If the documentation is missing, the creditor cannot rest on the proof of claim. It does not follow that he is forever barred from establishing the claim. Nothing in the · principles or practicalities of bankruptcy or in the language of any rule or statute justifies so disproportionate a sanction for a harmless error.... *A creditor should therefore be allowed to amend his incomplete proof of claim ... to comply with the requirements of Rule 3001, provided that other creditors are not harmed by the belated completion of the filing.*

*Stoecker,* 5 F.3d at 1027–28 (italics added). It therefore appears that eCast may amend its Claim. Does this necessarily

---

**4.** Rule 3001(e)(1) states that if a claim has been transferred other than for security before proof of the claim has been filed, the proof of claim may be filed only by the transferee or an indenture trustee. It follows that a transferee must provide proof of the transfer to satisfy this Rule.

mean, however, that eCast is *required* to do so?

The Courts that have examined Rule 3001's requirements have not completely agreed as to what penalty to impose, if any, when a claim is deficient under the Rule. For instance, the court in *Cluff*, 313 B.R. at 338, stated that a claim must be amended to provide the missing documentation only if the debtor "has stated a good faith need for inquiry into its validity or amount." *See also Kemmer*, 315 B.R. at 716 (even though the subject claims lacked sufficient documentation, they did set forth some amount of evidence; the debtor was therefore required to provide the court with at least some evidence to challenge the claims' legal sufficiency); *In re Shank*, 315 B.R. 799, 813 (Bankr.N.D.Ga. 2004)(while holding that a claim should not be disallowed for failure to comply with Rule 3001, the court also held that when there is no substantive objection to the claim, the creditor should not be required to provide any further documentation for it). In comparison, the court in *Henry*, 311 B.R. at 818, allowed the claimant to amend its claim because that was the remedy requested by the debtor. The court suggested, however, that the claim would have been disallowed if the debtor had so requested.

 The Court agrees with *Cluff*, *Kemmer* and *Shank* to the extent they hold that noncompliance with Rule 3001 does not necessarily mean that the claim *must* be amended to include the missing documentation in order to be allowed. The Court disagrees, however, that amendment of the claim is required only when the debtor has posed a substantive objection to the claim. In this Court's opinion, the determinative question is whether the preponderance of the evidence

supports allowance of the claim as filed. For instance, if a debtor's schedules are consistent with the amount set forth in the deficient claim and do not indicate that the debt is "disputed," "unliquidated" or "contingent," the creditor may ask the Court to take judicial notice of the schedules as additional evidence for its claim. Based on that evidence, *and in the absence of contrary evidence or objection presented by the debtor*, the Court would likely allow the claim as filed, *i.e.*, without requiring that it be amended to provide additional documentation. *See, e.g., In re Jorczak*, 314 B.R. 474 (Bankr.D.Conn.2004) (quoting *In re Bohrer*, 266 B.R. 200, 201 (Bankr.N.D.Cal.2001)("Statements in bankruptcy schedules are executed under penalty of perjury and when offered against a debtor are eligible for treatment as judicial admissions.")).

In so holding, the Court does not wish to encourage creditors to file proofs of claim with little to no documentation. Claims are filed not only for a debtor's benefit, but also for the benefit of trustees and other creditors-parties who are typically not as familiar with the nature and amount of the debtor's obligations. For that reason, claimants are expected to comply with Rule 3001 and are not advised to rely exclusively on the debtor's schedules, which do not carry the same evidentiary weight with respect to objections posed by parties other than the debtor. By the same token, the Court does not wish to encourage debtors to object to claims they admittedly owe. Objections under Rule 3001 should serve a legitimate purpose and should not be used to frustrate creditors or waste time. *See* Fed.R.Bankr.P. 9011.

 In its brief, eCast has essentially[5] asked the Court to take judicial notice of

---

**5.** Ecast did not explicitly ask the Court to take judicial notice of the Debtor's schedules but

did argue that the Debtor admitted the validi-

the Debtor's schedules. Those schedules list a debt to J.C. Penney in an amount slightly above the amount indicated in the eCast's Claim. The debt is not listed as "disputed," "unliquidated" or "contingent." This is strong evidence of the validity and amount of the Debtor's indebtedness to J.C. Penney; evidence which the Debtor has not refuted. As indicated previously, however, eCast has not sufficiently established that is the actual holder of the Claim and, therefore, the Court cannot allow the Claim in its present form. While there is sufficient evidence to support the validity and amount of the Claim, thereby relieving eCast of the duty to provide additional documentation in that regard, eCast must provide additional evidence of its purported assignment from J.C.Penney.

### *Conclusion*

For the reasons stated above, the Court denies the Debtor's request to disallow eCast's Claim. The Court concludes that the Claim and the Debtor's schedules sufficiently establish the validity and amount of the Debtor's obligation under her J.C. Penney credit card account. ECast is, however, given 30 days to amend the claim to include documentation establishing it as the actual holder of the Claim.

### *ORDER AND OPINION GRANTING MOTION FOR RECONSIDERATION OF ORDER ON DEBTOR'S OBJECTION TO CREDITOR ECAST SETTLEMENT CORPORATION'S PROOF OF CLAIM AND OVERRULING OBJECTION*

This matter came before the Court on eCast Settlement Corporation's ("eCast") Motion for Reconsideration of Order on Debtor's Objection to Creditor eCast Settlement Corporation's Proof of Claim (the "Motion to Reconsider"). For the reasons stated below, the Court grants the Motion.

On December 2, 2003, Debtor Shirley Relford ("Debtor") commenced a case under Chapter 13 of the United States Bankruptcy Code. On Schedule F, she listed unsecured credit card indebtedness to J.C. Penney, under account number 4245548861, in the amount of $800.00. The debt was not listed as either "contingent, liquidated or disputed." On February 9, 2004, eCast filed a claim in the amount of $771.14 "as assignee of General Electric/JCP Consumer" (the "Claim"). The "Account Summary" attached to the Claim stated that eCast is the assignee of General Electric/JCP Consumer and that the Debtor owes $771.14 on Account Number * * * * * * * * * * *5886.

The Debtor objected to the Claim, arguing that neither it, nor the Account Summary, provided the "cardholder agreement, an account history, a record of charges and payments, or any other documentation supporting the amount it claims against the estate." She also took issue with the fact that the Claim did not itemize interest and other charges as required, or provide sufficient proof of the purported assignment between J.C. Penney and eCast (the "Objection").

The Court ruled on the Objection by an opinion dated December 3, 2004 (the "Order"). In determining the sufficiency of the Claim, the Court first looked to the text of Code §§ 501 and 502, as well as to Bankruptcy Rule 3001. It then examined the contrasting holdings issued by various courts regarding the sufficiency of proofs of claim, citing in particular to *In re Cluff,* 313 B.R. 323 (Bankr.D.Utah 2004), *In re Hughes,* 313 B.R. 205 (Bankr.E.D.Mich. 2004); *In re Henry* 311 B.R. 813 (Bankr. W.D.Wash.2004) and *In re Kemmer,* 315

ty of the Claim by listing her obligation to J.C. Penney in her schedules.

B.R. 706 (Bankr.E.D.Tenn.2004). Ultimately, the Court held that a claim for credit card indebtedness must include "the parties' credit card agreement (and any amendments thereto), as well as evidence regarding the debtor's use of the credit card or consumer account." It further held that the debtor's credit card use could generally be established by a summary that included, at a minimum, "the amount of the debt, the name and account number of the debtor, account balance as of the petition date and a breakdown of interest, late fees and attorney fees if the debt includes such charges.... in the form of a business record or other equally reliable format."

In applying that standard, the Court found the Claim deficient in that it did not include the Debtor's credit card agreement with J.C. Penney or a breakdown of the Debtor's account balance into pre-petition interest, principal and fees. Nevertheless, it refused to disallow the claim on this basis, explaining that eCast could rest on the Debtor's schedules as additional evidence of the validity and amount of its Claim and, therefore, did not have to provide any additional evidence in that regard.

The Court also took issue, however, with the evidence attached to the Claim of the purported assignment between J.C. Penney and eCast, finding that the Bill of Sale attached to the Claim failed to establish that it was actually included in the assignment between the "Sellers" and eCast or that there was a contractual relationship between the Sellers and J.C. Penney. In order to have the Claim allowed, eCast was required to present additional evidence of the assignment.

In response, eCast filed its Motion to Reconsider on December 20, 2004, arguing that the Court erred in holding that a proof of claim for a transferred claim must include evidence of that transfer. In support, eCast directed the Court to Fed. R.Bankr.P. 3001(e), which provides in relevant part:

(e) Transferred Claim.

(1) Transfer of Claim Other Than for Security Before Proof Filed. If a claim has been transferred other than for security before proof of the claim has been filed, the proof of claim may be filed only by the transferee or an indenture trustee.

(2) Transfer of Claim Other Than for Security After Proof Filed. If a claim other than one based on a publicly traded note, bond, or debenture has been transferred other than for security after the proof of claim has been filed, evidence of the transfer shall be filed by the transferee. The clerk shall immediately notify the alleged transferor by mail of the filing of the evidence of transfer and that objection thereto, if any, must be filed within 20 days of the mailing of the notice or within any additional time allowed by the court. If the alleged transferor files a timely objection and the court finds, after notice and a hearing, that the claim has been transferred other than for security, it shall enter an order substituting the transferee for the transferor. If a timely objection is not filed by the alleged transferor, the transferee shall be substituted for the transferor.

According to the Advisory Committee notes to the 1991 amendments to Rule 3001, subdivision (e) was "amended to limit the court's role to the adjudication of disputes regarding transfers of claim. If a claim has been transferred prior to the filing of a proof of claim, there is no need to state the consideration for the transfer or other evidence of the transfer...."

Based on the foregoing, the Court must conclude that it erred in concluding that the Claim was deficient because it lacked sufficient evidence regarding the subject

transfer. The Court notes, however, that eCast essentially invited this error: First, by attaching evidence of the assignment to the Claim in the first instance and, second, by failing to argue that it was not required to provide evidence of the assignment in order for the Claim to be allowed. In response to the Debtor's objection that the Claim did not include sufficient evidence of the assignment, eCast failed to argue under Rule 3001(e) that such evidence was not required. In fact, it offered no response at all to this part of the Debtor's objection.

As a technical matter, then, eCast has waived the argument presented in its Motion to Reconsider. The Court is generally not inclined to consider issues first raised in a motion brought under Fed. R.Bankr.P.9023 or 9024 (incorporating Fed.R.Civ.P. 59 and 60). It is not an efficient use of judicial resources, nor is it fair to the other litigants. *In re Reese,* 91 F.3d 37, 39 (7th Cir.1996) ("A motion under Rule 59(e) is not authorized 'to enable a party to complete presenting his case after the court has ruled against him.'") (quoting *Frietsch v. Refco, Inc.,* 56 F.3d 825, 828 (7th Cir.1995)). Nevertheless, in the interest of clarity in future cases and given the various equities at issue here, the Court amends its Order and holds that eCast is not required to provide additional evidence of its purported assignment from J.C. Penney. The Motion to Reconsideration is granted and the Debtor's Objection to the Claim is overruled in its entirety.

### AMENDED ORDER AND OPINION GRANTING MOTION FOR RECONSIDERATION OF ORDER ON DEBTOR'S OBJECTION TO CREDITOR ECAST SETTLEMENT CORPORATION'S PROOF OF CLAIM AND OVERRULING OBJECTION

This matter came before the Court on eCast Settlement Corporation's ("eCast") Motion for Reconsideration of Order on Debtor's Objection to Creditor eCast Settlement Corporation's Proof of Claim (the "Motion to Reconsider"). For the reasons stated below, the Court grants the Motion.

On December 2, 2003, Debtor Shirley Relford ("Debtor") commenced a case under Chapter 13 of the United States Bankruptcy Code. On Schedule F, she listed unsecured credit card indebtedness to J.C. Penney, under account number 4245548861, in the amount of $800.00. The debt was not listed as either "contingent, liquidated or disputed." On February 9, 2004, eCast filed a claim in the amount of $771.14 "as assignee of General Electric/JCP Consumer" (the "Claim"). The "Account Summary" attached to the Claim stated that eCast is the assignee of General Electric/JCP Consumer and that the Debtor owes $771.14 on Account Number * * * * * * * * * * *5886.

The Debtor objected to the Claim, arguing that neither it, nor the Account Summary, provided the "cardholder agreement, an account history, a record of charges and payments, or any other documentation supporting the amount it claims against the estate." She also took issue with the fact that the Claim did not itemize interest and other charges as required, or provide sufficient proof of the purported assignment between J.C. Penney and eCast (the "Objection").

The Court ruled on the Objection by an opinion dated December 3, 2004 (the "Order"). In determining the sufficiency of the Claim, the Court first looked to the text of Code §§ 501 and 502, as well as to Bankruptcy Rule 3001. It then examined the contrasting holdings issued by various courts regarding the sufficiency of proofs of claim, citing in particular to *In re Cluff,* 313 B.R. 323 (Bankr.D.Utah 2004), *In re*

*Hughes,* 313 B.R. 205 (Bankr.E.D.Mich. 2004); *In re Henry* 311 B.R. 813 (Bankr. W.D.Wash.2004) and *In re Kemmer,* 315 B.R. 706 (Bankr.E.D.Tenn.2004). Ultimately, the Court held that a claim for credit card indebtedness must include "the parties' credit card agreement (and any amendments thereto), as well as evidence regarding the debtor's use of the credit card or consumer account." It further held that the debtor's credit card use could generally be established by a summary that included, at a minimum, "the amount of the debt, the name and account number of the debtor, account balance as of the petition date and a breakdown of interest, late fees and attorney fees if the debt includes such charges.... in the form of a business record or other equally reliable format."

In applying that standard, the Court found the Claim deficient in that it did not include the Debtor's credit card agreement with J.C. Penney or a breakdown of the Debtor's account balance into pre-petition interest, principal and fees. Nevertheless, it refused to disallow the claim on this basis, explaining that eCast could rest on the Debtor's schedules as additional evidence of the validity and amount of its Claim and, therefore, did not have to provide any additional evidence in that regard.

The Court also took issue, however, with the evidence attached to the Claim of the purported assignment between J.C. Penney and eCast, finding that the Bill of Sale attached to the Claim failed to establish that it was actually included in the assignment between the "Sellers" and eCast or that there was a contractual relationship between the Sellers and J.C. Penney. In order to have the Claim allowed, eCast was required to present additional evidence of the assignment.

In response, eCast filed its Motion to Reconsider on December 20, 2004, arguing that the Court erred in holding that a proof of claim for a transferred claim must include evidence of that transfer. In support, eCast directed the Court to Fed. R.Bankr.P. 3001(e), which provides in relevant part:

(e) Transferred Claim.

(1) Transfer of Claim Other Than for Security Before Proof Filed. If a claim has been transferred other than for security before proof of the claim has been filed, the proof of claim may be filed only by the transferee or an indenture trustee.

(2) Transfer of Claim Other Than for Security After Proof Filed. If a claim other than one based on a publicly traded note, bond, or debenture has been transferred other than for security after the proof of claim has been filed, evidence of the transfer shall be filed by the transferee. The clerk shall immediately notify the alleged transferor by mail of the filing of the evidence of transfer and that objection thereto, if any, must be filed within 20 days of the mailing of the notice or within any additional time allowed by the court. If the alleged transferor files a timely objection and the court finds, after notice and a hearing, that the claim has been transferred other than for security, it shall enter an order substituting the transferee for the transferor. If a timely objection is not filed by the alleged transferor, the transferee shall be substituted for the transferor.

According to the Advisory Committee notes to the 1991 amendments to Rule 3001, subdivision (e) was "amended to limit the court's role to the adjudication of disputes regarding transfers of claim. If a claim has been transferred prior to the filing of a proof of claim, there is no need

to state the consideration for the transfer or other evidence of the transfer...."

Based on the foregoing, the Court must conclude that it erred in concluding that the Claim was deficient because it lacked sufficient evidence regarding the subject transfer. Therefore, the Court amends its Order and holds that eCast is not required to provide additional evidence of its purported assignment from J.C. Penney. The Motion to Reconsideration is granted and the Debtor's Objection to the Claim is overruled in its entirety.[1]

---

1. This Court issues this amended order to correct an error in its original Order and Opinion Granting Motion for Reconsideration of Order on Debtor's Objection to Creditor eCast Settlement Corporation's Proof of Claim and Overruling Objection, issued on April 19, 2005. In that opinion, the Court mistakenly concluded that eCast waived the argument made in its Motion for Reconsideration by attaching evidence of the assignment to the Claim and by not responding to the Debtors' argument that such evidence was insufficient. Regretfully, the Court misread the record in this matter. It apologizes for any inconvenience or embarrassment to eCast or its counsel.