**In re Melvin L. PARRISH, Debtor.**

No. 02–19339.

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

July 6, 2005.

Marcus L. Poole, Esq., Cleveland, OH, for Debtor.

Stephen D. Miles, Esq., Dayton, OH, Bradley D. Burland, Esq., Beachwood, OH, for Creditor.

### MEMORANDUM OF OPINION

PAT E. MORGENSTERN–CLARREN, Bankruptcy Judge.

Beneficial Ohio Inc. d/b/a Beneficial Mortgage Co. of Ohio (Beneficial) filed a proof of claim alleging the debtor Melvin Parrish owes it a secured debt totaling $37,343.62 for money loaned. The debtor filed an amended objection to the claim and the creditor responded.[1] For the reasons stated below, the debtor's amended objection is sustained.

### JURISDICTION

Jurisdiction exists under 28 U.S.C. § 1334 and General Order No. 84 entered on July 16, 1984 by the United States District Court for the Northern District of Ohio. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

1.  Docket 37, 39, 58, 59.

2.  The debtor presented his case through Angela Shannon (a senior credit risk analyst of HSBC Consumer Lending, who appeared as a representative of the claimant) as if on

### THE EVIDENTIARY HEARING

The court held an evidentiary hearing on June 1, 2005.[2] These findings of fact reflect the court's weighing of the evidence, including determining the credibility of the witnesses. In doing so, the court considered the witnesses' demeanor, the substance of the testimony, and the context in which the statements were made, recognizing that a transcript does not convey tone, attitude, body language or nuance of expression. *See* FED. R. BANKR. P. 7052, incorporating FED. R. CIV. P. 52 (applied to contested matters under FED. R. BANKR. P. 9014). When the court finds that a witness's explanation was satisfactory or unsatisfactory, it is using this definition:

> The word satisfactory 'may mean reasonable, or it may mean that the Court, after having heard the excuse, the explanation, has that mental attitude which finds contentment in saying that he believes the explanation-he believes what the [witness] says with reference to the [issue at hand]. He is satisfied. He no longer wonders. He is contented.'

*United States v. Trogdon (In re Trogdon)*, 111 B.R. 655, 659 (Bankr.N.D.Ohio 1990) (discussing the issue in context of bankruptcy code § 727) (quoting *First Texas Savings Assoc., Inc. v. Reed*, 700 F.2d 986, 993 (5th Cir.1983)).

### ISSUE

Should Beneficial's proof of claim be allowed as filed?

### THE POSITIONS OF THE PARTIES

Beneficial argues that its proof of claim is prima facie evidence of the validity and

cross-examination, his own testimony, and exhibits. Beneficial presented its case through Ms. Shannon, cross-examination of the debtor, and exhibits.

amount of the debt, which it further established through the evidence. The debtor contends that Beneficial (1) does not get the benefit of having the claim viewed as prima facie correct because it is deficient on its face; and (2) Beneficial did not prove the claim amount is correct because Beneficial has taken inconsistent positions as to the amount that is due, the records relied on by Beneficial are incomplete and incorrect, and the claim includes fees that are not recoverable.

## FACTS

### I. Beneficial's proof of claim and interrogatory answers

In 1992, the debtor Melvin Parish signed a note for $40,177.30 payable to Trans-America Financial Services, which note was secured by a mortgage on property at 14704 Alder Road, East Cleveland, Ohio. The note called for monthly payments of $616.00 at 15.5% interest with the note to be paid in full in November 2004.

The debtor filed his chapter 13 case on August 23, 2002. The official proof of claim form instructs that any proof of claim should state the: "Name of Creditor (The person or entity to whom the debtor owes money or property)." On September 10, 2002, "Beneficial Ohio Inc. d/b/a Beneficial Mortgage Co. of Ohio" filed a proof of claim alleging it has a claim secured by real estate in the total amount of $37,343.62. The form also requires a secured creditor to state the "[a]mount of arrearage and other charges at time case filed include [sic] in secured claim, if any" to which Beneficial responded "$3,080.00 arrears[;] $4,824.56 fees." The form further instructs the creditor to attach (1) an itemized statement of all interest or additional charges; and (2) copies of supporting documents, such as promissory notes, security agreements, and evidence of perfection of lien. The only documents attached to Beneficial's proof of claim are a 1991 note and mortgage from the debtor to ITT Financial Services. The note, in the principal amount of $13,345.47, purports to be secured by a mortgage on real estate at 1840 Van Buren, East Cleveland, Ohio. Beneficial admits the attachments have nothing to do with the debtor's account at issue in this case.[3]

The debtor attempted several times in the course of his case to obtain accurate information as to the amount due on his loan. He eventually filed an objection to Beneficial's claim and requested an accounting. On November 26, 2004 (about two years after Beneficial filed its claim), Beneficial responded:

> Creditor states that Debtor's mortgage is a 12 year mortgage which would have been paid off in 2004 if Debtors [sic] remained current on their payments. The balance on said mortgage as of November 2, 2004 is $30,749.18. Interest continued to accrue due to the Debtor's delinquency on payments. Attached is a copy of the payment history for the Debtor's review.[4]

The document attached does not have entries for 1992 through August 1995 and is not entirely self-explanatory.

The parties conducted discovery before the evidentiary hearing. As part of that process, the debtor posed interrogatories to Beneficial, including questions designed

---

**3.** Angela Shannon, on cross-examination. Beneficial did not explain why it had a copy of a note the debtor entered into with ITT Financial Services or why it put this document into the public record.

**4.** Docket 37, 39.

to establish (1) Beneficial's relationship to this claim; and (2) the amount of the claim and the manner in which it was calculated.[5] Beneficial provided three sets of answers to the interrogatories.

These are the original answers Beneficial provided on March 25, 2005:[6]

*Interrogatory 2*: Provide the date on which Beneficial purchased the subject mortgage.

Answer: Approximate date was October 6, 1999, the date of the assignment of the mortgage.

*Interrogatory 3*: Provide the amount of the principal balance due on the loan at the time Beneficial purchased the mortgage and the amount of any alleged arrears on said mortgage loan.

Answer: $37[,]368.91, arrearage unknown at this time. We are waiting to receive the payment histories.

*Interrogatory 4*: Provide an itemized loan pay off amount for said mortgage as of the date of the filing of the Bankruptcy Petition.

Answer: Information is attached.

The document Beneficial attached is titled "Itemization Statement" and states:

| | |
|---|---|
| Amount of pre-petition arrearage: | $ 6,160.00 |
| Pre-petition expenses (counsel fees, cost of suit, service costs, filing costs, cost of listing property) | $ 11,392.95 |
| Total amount of pre-petition | $ 17,552.95 |
| Standard payment amount: | $ 616.00 |

Debtor Marvin L. Parrish Case # 99–19775.[7]

*Interrogatory 5*: State the number of payments Debtor was in arrears as of the date of the filing of the Bankruptcy Petition.

Answer: Ten months—$6[,]160.00 divided by $616 = 10 payments

*Interrogatory 6*: List the category and amount of any other item (other than delinquent mortgage payments) included in Beneficial's arrearage Claim in its Proof of Claim.

Answer: Information is not available yet.

On May 15, 2005, Beneficial filed supplemental answers to the interrogatories.[8] Those answers state:

*Interrogatory 2*: Provide the date on which Beneficial purchased the subject mortgage.

Answer: TransAmerica was acquired on June 23, 1997.

*Interrogatory 3*: Provide the amount of the principal balance due

**5.** Debtor exh. 5.

**6.** The interrogatory answers are signed by attorney Stephen Miles, with information provided by Pamela Sanders, "Bankruptcy Specialist, HSBC–Beneficial." (Debtor exh. 6).

**7.** This is the right debtor, but the wrong case number. This case number relates to the debtor's previous chapter 13.

**8.** A party has a duty to amend an interrogatory response if the party learns the response is "in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process." FED. R CIV. P. 26(e)(2) (made applicable by FED. R. BANKR. P. 7026). The supplemental answers are signed by attorney Stephen Miles, this time with information from Angela Shannon. (Debtor exh. 8).

on the loan at the time Beneficial purchased the mortgage and the amount of any alleged arrears on said mortgage loan.

Answer: The principal due when HSBC purchased the loan was $35[,]304.90; the loan was presumed to be current at that time.

*Interrogatory 4*: Provide an itemized loan pay off amount for said mortgage as of the date of the filing of the Bankruptcy Petition.

Answer: A copy of the proof of claim has been requested from the Court which will set forth the figures due.

*Interrogatory 5*: State the number of payments Debtor was in arrears as of the date of the filing of the Bankruptcy Petition.

Answer: As of 8/23/2002, the debtor was past due for 42 payments toaling [sic] $25[,]872.00:

1995—1 payt [sic], 1996—0 payts, 1997—3 payts, 1998—3 payts plus $158.00, 1999—12 payts (no payments were made), 2000—5 payts, 2001—11 payts, 2002 through Aug. 23, 2002—7 payts. The total amount due through 8/23/2002 was $25[,]872 (42 payts due × $616.00 = $25[,]872.00.)

*Interrogatory 6*: List the category and amount of any other item (other than delinquent mortgage payments) included in Beneficial's arrearage Claim in its Proof of Claim.

9. The answers were again filed by attorney Stephen Miles with information from Angela

Answer: Will do once we receive the proof of claim.

On May 20, 2005 (two weeks before the evidentiary hearing), Beneficial filed its second supplemental set of answers to interrogatories, with this information: [9]

*Interrogatory 2*: Provide the date on which Beneficial purchased the subject mortgage.

Answer: TransAmerica was acquired by Household Acquisition Corporation on June 23, 1997. This loan was transferred for servicing to Beneficial Ohio Inc. which is a subsidiary of HSBC fka Household.

*Interrogatory 3*: Provide the amount of the principal balance due on the loan at the time Beneficial purchased the mortgage and the amount of the alleged arrears on said mortgage loan.

Answer: The principal due when the loan was purchased was $35[,]304.90; the loan was presumed to be current at that time for the formation of the recent payment history.

*Interrogatory 4*: Provide an itemized loan pay off amount for said mortgage as of the date of the filing of the Bankruptcy Petition.

Answer: See answer to Number 5.

*Interrogatory 5*: State the number of payments Debtor was in arrears as of the date of the filing of the Bankruptcy Petition.

Shannon. (Docket 55).

Answer: As of 8/23/2002, the debtor was past due for 42 payments totaling $25[,]872.00:

1995—1 payt [sic], 1996—0 payts, 1997—3 payts, 1998—3 payts plus $158.00, 1999—12 payts (no payments were made), 2000—5 payts, 2001—11 payts, 2002 through Aug. 23, 2002—7 payts. The total amount due through 8/23/2002 was $25[,]872 (42 payts due × $616.00 = $25[,]872.00)

Interrogatory 6: List the category and amount of any other item (other than delinquent mortgage payments) included in Beneficial's arrearage claim in its Proof of Claim.

Answer: There were fees listed in the amount of $4[,]824.50 which would appear to be foreclosure costs and fees.

## II. The additional hearing evidence

Angela Shannon, a senior credit risk analyst at HSBC Consumer Lending, testified at the hearing. As part of her responsibilities, she reviews cases for the legal department and researches questions about loan calculations. She did not have any involvement with this loan until recently when she reviewed the account records[10] and prepared an amortization schedule for the litigation.[11]

Shannon testified that HSBC owns Beneficial Ohio Inc. and that Beneficial acquired a portfolio from TransAmerica, including this account. Shannon did not work for HSBC at the time Beneficial

became involved with the loan. She did, however, review Beneficial's records, which can be divided into three time periods:

*December 21, 1992 through August 21, 1995:* Beneficial does not have any records at all.

*August 21, 1995 through July 1997:* Beneficial did not have any connection to the loan during this period. In July 1997, Beneficial "boarded" records received from TransAmerica on to its system for these dates. There was no testimony as to who prepared the records received from Trans-America, how they were created or what steps Beneficial took to transfer them fully and accurately to Beneficial's system. Shannon did not have a key or legend that explains the notations used by Trans-America.

*July 1997 forward:* Beneficial seems to claim that it kept its own payment history during this time. However, Beneficial gave conflicting answers as to when it "purchased the mortgage," identifying the date as both 1997 and 1999, without a satisfactory explanation for the discrepancy.[12] A May 13, 2005[13] internal memo from John Conley at "HTS–Revolving Lending" with a copy to Shannon states:

Here's data for this customer from 1997–2000. We don't have any activity showing on payment history for 1999[,] other than the account undergoing purchase-and-sale.[14]

Beneficial did not provide a clear or satisfactory explanation for who created the 1997 and 1998 records or who was involved

---

**10.** Debtor exh. 2.

**11.** Debtor exh. 7.

**12.** Compare debtor exhibit 6 at interrogatory 2 with debtor exhibit 8 at interrogatory 2. *See also* Beneficial's hearing brief at ¶ 4. (Docket 49).

**13.** This is a few weeks before the evidentiary hearing.

**14.** Beneficial exh. D; Shannon testimony.

in the 1999 purchase and sale. If that is when Beneficial acquired an interest in the loan, then Beneficial did not create the records for July 1997 to the 1999 transaction date and there was no testimony as to who did so.

In sum, the records are problematic.

To compensate for the missing records from 1992 through August 21, 1995, Shannon assumed that the debtor made each payment during that period on time and in full. That results in an account balance on that date of $36,197.10. Shannon did not, however, give corresponding credit for the 1997–1999 time frame. Instead, she created an amortization schedule using the records she had been given.[15]

The accounting problems begin almost immediately. The debtor testified that he made all payments due through 1998. In 1999, he ran into financial difficulty and did not make any payments that year. Beneficial's supplemental interrogatory answers state that the debtor did not miss any payments in 1996. Shannon's calculation, however, only credits the debtor with 11 payments because the third-party records show that one payment was reversed, without explanation. Shannon could not explain the discrepancy and the court finds that the debtor made 12 payments that year. The records used by Shannon show the debtor made fewer than all payments in 1997 and 1998, while the debtor testified that he made all payments those years. Because Beneficial's records are incomplete and Shannon's testimony was inconsistent and unconvincing, the court accepts the debtor's testimony that he made 12 payments in 1997 and 12 payments in 1998.

The debtor acknowledged he did not make any payments in 1999.

The accounting differences accelerate in 2000. The debtor testified that his financial situation stabilized that year and he made each payment due by writing checks from one of his three bank accounts. Shannon, however, gave the debtor credit for only seven payments. She based this on Beneficial records showing that 11 payments were received that year and, of those payments, Beneficial reversed four without explanation other than the "comment" "8 9 10 11 V Y BB."[16] Shannon is not familiar with these notations and does not know why Beneficial voided the credits; she speculated that Beneficial did so either because the debtor's checks were returned for insufficient funds or Beneficial inadvertently applied the amounts to the wrong account or the debtor sent in the wrong payment amount.

The court would be justified in rejecting these explanations out of hand because they are speculation. In this case, however, there are additional reasons to reject the suggestions. First, each amount credited and debited is $616.00, the amount of the debtor's monthly payment, so there is no reason to believe that the debtor sent in an incomplete or incorrect payment. Second, there is nothing in the record to show that the amount should have been credited to another borrower whose payment was exactly $616.00. Third, the debtor introducing copies of cancelled checks payable to Beneficial for the September, October, and November 2000 payments, three of the four months for which Shannon's calculations did not give the debtor credit. These

---

15. Shannon created the amortization schedule (debtor's exhibit 7) by taking information from debtor's exhibit 2 (the payment records from various sources), with some minor changes.

16. Beneficial reversed credit for the payments dated September 3, 2000, October 23, 2000, November 10, 2000, and December 7, 2000. (Debtor exh. 2 at 21/26 and 22/26).

checks show they were negotiated.[17] And fourth, "Beneficial Mortgage Corp." provided information to the IRS for calendar year 2000 stating that the debtor paid $6,776.00 in interest, which would equal 11 payments if all amounts are applied to interest rather than to principal.[18]

In an attempt to explain the contradiction between Beneficial's records and the debtor's evidence, Shannon suggested that, notwithstanding the negotiation, the checks were actually returned for insufficient funds, thus justifying the credit reversal in the records. There is no evidentiary basis for this suggestion. In light of these considerations, the court finds that the debtor made at least 11 payments in 2000 and the records relied on by Shannon are incorrect.[19]

The problems continue into calendar year 2001. Shannon testified that Beneficial's records show the debtor made eight payments and Beneficial reversed seven of them, resulting in the debtor receiving credit for only one payment.[20] The debtor again introduced cancelled checks showing seven payment checks for 2001.[21] The court credits the debtor's testimony on this point, finds that Beneficial's records are inaccurate, and further finds that the debtor made at least seven payments in 2001.

For the year 2002, Beneficial's records show that the debtor made a payment on February 8, 2002 that was reversed. The debtor again introduced a cancelled check dated February 2, 2002 that was negotiated. The court again finds that Beneficial's records are inaccurate and the debtor made this payment.

The accounting problems are also evident when one looks to the principal and interest balance Beneficial has at various times claimed the debtor owes:

July 28, 2002: Beneficial sends the debtor a notice that his "new balance" is $32,519.06 plus unpaid deferred interest of $715.83.[22]

September 10, 2002: Beneficial files a proof of claim stating $37,343.62 is due, including interest that is not itemized.

November 26, 2004: Beneficial's response to the debtor's claim objection says that "[t]he balance on said mortgage as of November 2, 2004 is $30,749.18. Interest continued to accrue due to the Debtor's delinquency on payments."[23]

March 25, 2005: Beneficial's original answers to interrogatories state that the principal balance due "when Beneficial purchased the loan [i.e. October 6, 1999 per interrogatory no. 2]" was "37,-

---

**17.** The debtor did not have the fourth check, which was drawn on a different account.

**18.** Debtor's exh. 15, p. 4. Shannon testified that most if not all of the payments would be applied to interest at this point in the loan because the debtor did not make all of his payments on time and in full.

**19.** Beneficial argued in closing that the debtor had the burden to introduce his bank statements into evidence to verify that the checks were debited. As is true on many issues, there are several ways to prove a fact and the route chosen by the debtor satisfies his bur-

den. If Beneficial believed that the checks were somehow not negotiated, it had the opportunity during discovery to obtain the bank statements to test its theory.

**20.** The reversed payments are dated January, February, March, May, July, October, and November 2001.

**21.** Debtor exh. 13.

**22.** Debtor exh. 3.

**23.** Docket 39.

368.91, arrearage unknown at this time."

May 15, 2005: Beneficial's first supplemental answers to interrogatories state that the principal balance due when Beneficial purchased the loan [i.e. June 23, 1997 this time, per interrogatory no. 2] was "35[,]304.90; the loan was presumed to be current at that time."

May 20, 2005: Beneficial's second supplemental answers to interrogatories state that "the principal due when the loan was purchased [i.e. June 23, 1997 per interrogatory no. 2] was "35[,]304.90; the loan was presumed current at that time for the formation of the recent payment history."

June 1, 2005: Shannon testifies from the proof of claim that the principal balance due on September 10, 2002 is $32,519.06 with an additional amount due of $4,824.56 for "foreclosure fees." This does not include either past due interest, which Shannon estimated at $13,300.00, or $3,080.00 in arrears. In other words, Beneficial claims in 2005 that on September 10, 2002, the debtor really owed $53,723.62.

Beneficial also made conflicting statements as to the number of payments the debtor missed prepetition:

September 10, 2002: Beneficial states in its proof of claim that the debtor owes $3,080.00 in arrears, which is five payments at $616.00 a month.

March 25, 2005: Beneficial states in its original answers to interrogatory 5: "Ten months—$6[,]160.00 divided by $616 = 10 payments." [24]

May 15, 2005: Beneficial states in its first supplemental interrogatory answers that as of August 23, 2002, the debtor was due for 42 payments totaling $25,872.00. [25]

Shannon was not able to provide a satisfactory answer for why Beneficial gave different answers to the same question and the court was not convinced that her most recent number is, in fact, an accurate one because it fails to credit the debtor for certain payments made. [26]

## DISCUSSION

### I.

■ An unsecured creditor who wishes to participate in a chapter 13 distribution must file a proof of claim. *See* FED. R. BANKR. P. 3002(a). This requirement also applies to a secured creditor trying to recover a deficiency balance. *See* 9 COLLIER ON BANKRUPTCY ¶ 3001.02 (15th ed. rev.2005). As a practical matter, secured creditors routinely file proofs of claim in chapter 13 cases so that they can receive payment through the chapter 13 plan on any arrearage due.

■ The bankruptcy rules govern the filing of proofs of claim. They provide that when a proof of claim is based on a writing, the writing must be filed with it. *See* FED. R. BANKR. P. 3001(c). A proof of claim based on a loan secured by a mortgage on the debtor's home does not substantially comply with the rules unless it

---

**24.** Exh. 6.

**25.** Exh. 8.

**26.** This is not intended to reflect on Shannon personally, but rather shows that the records

for this account have not been properly created and/or maintained and Beneficial did not provide a satisfactory explanation for why different authorized agents provided incomplete and/or inconsistent information.

includes a copy of the promissory note or a satisfactory explanation for why the note is not provided. *See In re Shaffner,* 320 B.R. 870, 874 (Bankr.W.D.Mich.2005). Also, if a creditor claims a security interest in property, the creditor must attach evidence that the security interest is perfected. *See* FED. R. BANKR. P. 3001(d).

■ A filed proof of claim is deemed allowed unless a party in interest objects to it. *See* 11 U.S.C. § 502(a). If an objection is made, "the court, after notice and a hearing, shall determine the amount of such claim ... as of the date of the filing of the petition, and shall allow such claim in such amount," except as provided under bankruptcy code § 502(b). 11 U.S.C. § 502(b).

■ On objection, a proof of claim filed in accordance with the rules is prima facie evidence that the claim is valid and in the amount stated. *See* FED. R. BANKR. P. 3001(f). The objecting party must produce evidence which rebuts the prima facie validity of the claim. *See In re Kemmer,* 315 B.R. 706, 713 (Bankr.E.D.Tenn.2004) (quoting *In re Allegheny Int'l, Inc.,* 954 F.2d 167, 173–74 (3d Cir.1992)). If the objector rebuts the validity of the claim, the burden reverts to the claimant to prove its claim by a preponderance of the evidence. *Id. Compare Raleigh v. Illinois Dep't of Revenue,* 530 U.S. 15, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000) (holding that when the substantive law creating a tax obligation puts the burden of proof on the taxpayer, the burden of proof remains with the taxpayer in the proof of claim context).

■ If a proof of claim is not filed in accordance with the rules, the creditor does not get the evidentiary benefit of having the claim deemed to be prima facie valid. *See In re Cluff,* 313 B.R. 323, 337 (Bankr.D.Utah 2004). Consequently, the failure to include the required supporting documentation negates its prima facie validity. *See In re Henry,* 311 B.R. 813, 817 (Bankr.W.D.Wash.2004). "Without [the] presumption of validity, the burden of proving the existence and amount of the claim falls to the claimant[.]" *In re Kemmer,* 315 B.R. at 713. As the *Kemmer* court discussed, initially this burden is fulfilled by the presentation of any evidence of the claim and the objecting party is then required to present evidence that the claim is legally deficient. *Id.*

■ In this case, Beneficial filed a proof of claim alleging it is owed money based on a note signed by the debtor which is secured by an interest in real estate that is properly perfected. Because Beneficial did not attach the relevant note, security agreement, and evidence that its lien is perfected, it does not get the benefit of the presumption that its claim is valid and in the amount stated. Beneficial, therefore, must prove that its claim is properly allowed and in the amount stated.

## II.

■ To have an allowed proof of claim, the claimant must prove an initial fact: that it is the creditor to whom the debt is owed or, alternatively, that it is the authorized agent of the creditor. The debtor admits he borrowed money from TransAmerica Financial Services[27] and that he owes some amount of money to TransAmerica or its legal successor. The documents filed in this case and the evidence presented at the hearing do not, however, establish that Beneficial is either the creditor or the creditor's agent.

The documentary evidence shows that on October 6, 1999, "TransAmerica Financial Services nka HFTA First Financial

---

27. Beneficial exh. A.

Corporation" assigned the debtor's note and mortgage to Household Realty Corporation. The mortgage was recorded with the Cuyahoga County Recorder on October 22, 1999.[28] After that, the facts are murky. The proof of claim was filed by Beneficial Ohio Inc. d/b/a Beneficial Mortgage Co. of Ohio. On January 22, 2003, TransAmerica Financial Services nka HFTA First Financial Corporation filed a motion for relief from stay relating to the property and debt at issue here. After reviewing the motion and supporting papers, the court adjourned the hearing with instructions to the movant to file an amended motion because the documents attached showed the movant no longer held an interest in the property and, therefore, did not have standing to move for relief from stay.[29] On March 3, 2003, Household Realty Corporation filed an amended motion for relief from stay relating to this debt. The amended motion includes an affidavit swearing that the note signed by Melvin Parrish was lost or destroyed and the debt is owed to Household Realty Corporation.[30] The debtor did not oppose the amended motion and the court granted it.[31] The debtor then entered into an agreed order with "the creditor" to reinstate the stay.[32] As of June 18, 2003 when that order was entered, the record, therefore, shows that Household Realty Corporation is the creditor.

How then does Beneficial fit in? The original interrogatory answers say that Beneficial purchased the mortgage on October 6, 1999, when the mortgage was

assigned to it. The first supplemental answers state that Beneficial acquired TransAmerica on June 23, 1997 and Beneficial purchased the loan on that date. The second supplemental answers state that TransAmerica was acquired on June 23, 1997 but it does not identify the acquirer. Those answers also say the loan was transferred by an unstated entity for servicing on an unstated date to Beneficial Ohio Inc. which is a subsidiary of HSBC fka Household. Beneficial's hearing brief states that the note and mortgage were assigned to Household Realty Corporation on October 22, 1999. The remaining twist is that Shannon testified that HSBC owns Beneficial Ohio Inc.

■■■■■ It is little wonder that throughout this case the debtor has complained that he does not know who this debt is now owed to. The relationships between and among these entities may be understood internally by Beneficial, but it is the claimant's burden to bring that information to the court. If the claimant is the original lender, the claimant can meet its burden by introducing evidence as to the original loan. If the claimant acquired the note and mortgage from the original lender or from another party who acquired it from the original lender, the claimant can meet its burden through evidence that traces the loan from the original lender to the claimant.[33] A claimant who is a servicer must, in addition to establishing the rights of the holder, identify itself as an authorized agent for the holder. Here,

---

**28.** Beneficial exh. C.

**29.** Docket 16.

**30.** Docket 17. Given this affidavit, query what good faith basis TransAmerica had for filing a motion for relief from stay on a property in which it held no interest.

**31.** Docket 21.

**32.** Docket 29.

**33.** *See for example,* Northern District of Ohio Local Bankr.R. 4001–1 and General Order 99–1 (adopting a standardized form for motions for relief in chapter 13 cases which requires the movant to show the chain of title for the note and security agreement).

Beneficial might be the current holder of the debtor's note and/or mortgage or it might be the servicer for whoever the holder is, but it failed to prove either relationship. The debtor's objection is sustained.

## III.

█ Alternatively, assuming that Beneficial could prove that it is either the holder of the note and mortgage or the agent of the holder, the proof of claim is still insufficient because Beneficial fell woefully short of proving the amount of its claim.

As described in detail above, Beneficial took conflicting positions as to the number of payments made, the principal balance due, and the nature and amount of additional charges. Moreover, Beneficial did not provide a satisfactory explanation for why its most recent figures should be believed, given that they are based on calculations that the court has found do not accurately reflect the account activity.

The proof of claim also includes amounts described as foreclosure fees and costs. Even if these costs are potentially recoverable,[34] Beneficial did not prove that the contract entitles it to these expenses and did not provide any support for the amount claimed in each category. Beneficial again failed to meet its burden of proof.

## IV.

█ Beneficial argues that none of these accounting problems would have arisen if the debtor had made his payments on time and in full. That may or may not be true because it assumes that the lender(s) and/or servicer(s) would have accurately recorded his payments. Of greater significance, however, is that this particular aspect of the debtor's behavior is irrelevant as a defense. A lender has an obligation to keep a full and accurate accounting of payments made and charges accrued, should be prepared to explain the contractual basis for all charges, and should be able to document that charges such as inspection fees, court costs, and the like were actually incurred and paid. An entity acquiring a note and mortgage from a lender stands in the same shoes on this point and has the same duty. This is so no matter how many times a note and mortgage are transferred. A borrower does not forfeit the right to have a lender maintain accurate records just because the borrower misses payments.

## CONCLUSION

For the reasons stated, the debtor's amended objection to the proof of claim filed by Beneficial is sustained and the response is overruled. That does not, however, solve the problem because the debtor acknowledges that he owes money to some entity and there presumably is still a lien on the real estate at issue. To resolve that dilemma, Beneficial, or whoever actually holds or services the claim against the debtor, shall have 20 days from the date on which this order is entered to file a proof of claim calculated in accordance with the factual findings made above. If Beneficial is the holder of the note and mortgage, Beneficial is to attach

**34.** Beneficial admits that the amounts, which range from $4,824.45 in the proof of claim to $11,392.95 in Beneficial's answers to interrogatories, include *prepetition attorney fees.* *See* debtor's exh. 6. This court has held that Ohio law prohibits the creditor from collecting prepetition attorney fees from the borrower under these circumstances. *See In re Lake,* 245 B.R. 282 (Bankr.N.D.Ohio 2000). Despite this, Beneficial included these amounts in its proof of claim, did not withdraw them in its response or at hearing, and did not defend the request. *See* FED. R. BANKR. P. 9011.

documentation to the proof of claim establishing that relationship. If Beneficial is not the holder, Beneficial is to give notice to the holder of this deadline and is to file a notice with the court that such notice has been given. The proof of claim is to comply in all respects with the bankruptcy rules. The debtor shall have 20 days after the proof of claim is filed to file an objection to it, if any.

A separate order will be entered reflecting this decision.