**In re Elaine M. PAYNE, Debtor.**

No. 04–16923.

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

Aug. 29, 2005.

Kevin M. Ryan, Esq., North Ridgeville, OH, for Debtor.

Scott D. Fink, Esq., Weltman, Weinberg & Reis Co., L.P.A., Cleveland, OH, for Aurora Loan Services.

## MEMORANDUM OF OPINION

PAT E. MORGENSTERN–CLARREN, Bankruptcy Judge.

Secured creditor Aurora Loan Services Inc. filed a claim in this chapter 13 case, alleging it is owed $15,813.75 in prepetition mortgage arrearages. The debtor Elaine Payne objects to the claim as being an incorrect amount. For the reasons stated below, the objection is sustained in part.

### JURISDICTION

Jurisdiction exists under 28 U.S.C. § 1334 and General Order No. 84 entered on July 16, 1984 by the United States District Court for the Northern District of Ohio. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

### THE DISPUTE

This is the latest in a series of cases where chapter 13 debtors challenge claims made by the companies that own or service their home mortgage loans.[1] In general, the debtors question how the companies obtained an interest in their particular loan as well as the manner in which the companies have applied their payments and deducted sums from their accounts. In this case, the debtor makes three allegations: (1) Aurora's proof of claim does not show that it has an interest in her loan; (2) Aurora failed to credit her with payments made from July 1, 2003 to June 1, 2004; and (3) Aurora unilaterally and without notice used money the debtor and the chapter 13 trustee paid to Aurora and instead of applying the funds to the debtor's principal, interest, real estate taxes, property insurance, and late charges, instead applied the funds to its own attorneys fees, "statutory expenses," and inspection fees.

Again, as is often the case, the issue is compounded by the fact that the account records provided by Aurora to the debtor are not comprehensible to a person outside of Aurora's employ[2] and Aurora did not

---

1. *See, for example, In re Parrish,* 326 B.R. 708 (Bankr.N.D.Ohio 2005).

2. *See, for example,* debtor's exhibit 30. Among other problems, the documents use codes that are not defined, do not identify the source of payments, do not explain certain debits that are listed under broad categories, and do not explain why funds are put in and taken out of suspense accounts.

create and produce a complete, intelligible running account record until very shortly before the evidentiary hearing.

## AURORA'S PROOF OF CLAIM

On August 13, 2004, Aurora filed a proof of claim asserting that the debtor failed to make $14,213.01 in payments prepetition, in addition to which she owed $2,119.33 in "legal costs" and $370.48 in "additional charges." After crediting the debtor $889.07 from a suspense account, Aurora claimed a total arrearage of $15,813.75.

The documents attached do not show that Aurora either owns or services the account. Instead, they show that on October 26, 1998, the debtor and her husband financed the purchase of their home by borrowing $104,070.00 from Ameriquest Mortgage Company. They signed a note to repay these funds secured by a mortgage on the residence. On October 14, 2002, Ameriquest assigned the debtor's note and mortgage to Mortgage Electronic Registration Systems, Inc. which recorded the mortgage with the county recorder.

## THE POSITIONS OF THE PARTIES

Aurora contends that it purchased the note and mortgage in 2000 from Ameriquest and is entitled to a presumption that its proof of claim is valid. Aurora argues further that the hearing evidence shows it is owed more than the amount originally claimed. According to the debtor, Aurora does not get the benefit of the presumption because the proof of claim does not comply with the bankruptcy rules. She maintains she was current with Aurora when she filed her case and has made all required payments since then. She also disputes attorney fees, inspection charges, and other expenses posted by Aurora to her account and/or deducted from her payments without her knowledge or consent. She argues that these deductions, which

she learned about only recently, cause her account to be incorrectly calculated.

## THE EVIDENTIARY HEARING

The debtor presented her case through her testimony, cross-examination, and documents. Aurora presented its case through William Wheeler, who has been with Aurora for two months as an assistant vice-president and bankruptcy manager. In preparation for the evidentiary hearing, Mr. Wheeler instructed an individual in his department to create a spreadsheet detailing the manner in which Aurora applied the debtor's payments. He does not have any personal knowledge of the account. Aurora also presented its case through cross-examination and documents. Additionally, the parties stipulated to certain facts.

## DISCUSSION

### *Aurora's proof of claim is not entitled to a presumption of validity*

██ A proof of claim filed in accordance with the bankruptcy rules is prima facie evidence that the claim is valid in the amount stated. Fed. R. Bankr. P. 3001(f). To be filed in accordance with the rules, a proof of claim based on a loan secured by a mortgage on the debtor's house must include a copy of the promissory note as well as evidence that the security interest is perfected. *In re Parrish*, 326 B.R. 708, 718–19 (Bankr.N.D.Ohio 2005). A claim without this support does not enjoy a presumption of validity. *Id.*

██ The proof of claim at issue here does not comport with the bankruptcy rules. Aurora filed the claim in its own name as creditor. The attachments, however, show that Ameriquest made the original loan and assigned it in 2002 to Mortgage Electronic Systems Inc. There is nothing in the documents to show that the

loan documents were ever transferred to Aurora. As a result, the claim is not entitled to a presumption of validity.

### Aurora is the loan servicer, but did not prove it owns the note and mortgage

█ When a claim is not presumed to be valid, the creditor must prove the existence and validity of the debt. *Id.* at 719. Aurora must prove first that it is either the creditor to whom the debt is owed or the servicer for the creditor. *Id.*

At hearing, the parties stipulated that Aurora took over the servicing of the loan in May 2000. Additionally, William Wheeler testified that Aurora purchased the note and mortgage on that date. The only ownership documentation in evidence, however, is to the contrary. According to the proof of claim, the loan ownership went directly from Ameriquest to Mortgage Electronic Systems, Inc. in 2004, two years after Aurora says it purchased the loan from Ameriquest.

The evidence did not prove that Aurora owns the note and mortgage. Based on the stipulation, however, Aurora is the loan servicer.

### Aurora credited the debtor's account with the disputed payments

The debtor initially contended that Aurora failed to give her credit for payments made from July 1, 2003 to June 1, 2004. The parties stipulated that the debtor made six payments totaling $16,052.39 during this time. The spreadsheet introduced at the hearing shows that Aurora credited each payment to the debtor's account.[3]

---

**3.** Debtor's exh. 41.

**4.** Note ¶ 7(A).

**5.** Paragraph 1 is titled "Payment of Principal and Interest; Prepayment and Late Charges."

The remaining dispute, though, is how Aurora applied the payments.

### Aurora did not apply the debtor's payments appropriately

█ The debtor signed an adjustable rate note designed to have her loan paid in full by November 1, 2028. Under the note, her monthly payments, as periodically adjusted, include amounts for property insurance and taxes which are to be escrowed by the lender and paid when due. If a payment is not made in full by the end of 15 calendar days after the due date, the note calls for a late charge of 6% of the overdue payment of principal and interest.[4]

The mortgage explains how the lender will apply each payment made under the note:

> **3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2[5] shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.[6]

In certain circumstances, the mortgage allows the lender to protect its rights in the property by taking specified actions. If those circumstances exist and the lender chooses to take any such actions, the contract provides that expenses incurred will be dealt with in this manner:

> . . . [a]ny amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this [mortgage]. Unless Borrower and

---

Paragraph 2 is titled "Funds for Taxes and Insurance."

**6.** Mortgage ¶ 3.

Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, *upon notice from Lender to Borrower requesting payment.*[7]

The lender must give this notice to the borrower by delivering or mailing it to the property address.[8]

Mr. Wheeler testified that Aurora's practice is to apply payments in accordance with the contract. Generally, payments received are applied to the oldest outstanding contractual amount. In a bankruptcy situation, payments received from a chapter 13 trustee are applied to prepetition arrearages and a debtor's regular monthly payments are applied to current payments.

A review of Aurora's spreadsheet for this account shows that Aurora repeatedly failed to comply with the contract and also failed to apply payments received from the chapter 13 trustee to the debtor's prepetition arrearage.[9] Starting in June 2000, there are more than 60 occasions where Aurora charged the debtor's account for what are described as inspection fees, foreclosure attorney fees, foreclosure attorney costs, foreclosure title search, bankruptcy fees, statutory expenses, and foreclosure costs. This is significant because Aurora did not keep a separate record of such expenses. Instead, Aurora posted them on the debtor's loan account, thus affecting the application of payments made by the debtor and the trustee. Also, on seven occasions, Aurora took funds sent to it by the chapter 13 trustee which should have been applied to prepetition arrearages and instead applied the funds to its own attorney fees, foreclosure costs, and inspection fees. Each of these entries was to the debtor's financial detriment.

Aurora did not argue at the hearing that any specific contract provision permitted it to handle the account in this way. Aurora admits it did not give the debtor the required notice requesting payment for disbursements and did not even tell the debtor it had added these charges to the account.[10] Instead, Aurora just kept piling on extra charges which left the debtor baffled as to how her account got into its current state. Because Aurora incorrectly applied the payments, its accounting is significantly flawed and cannot be used to prove its claim.

The court has not lost sight of the fact that the debtor borrowed money and failed to repay it. It is an obvious reality in the lending world, however, that some loans will not be repaid in accordance with their terms. The question is: when faced with that situation, what is the amount owed by the borrower to the lender? This question

---

7.  Mortgage ¶ 7 (emphasis added).

8.  Mortgage ¶ 14.

9.  Debtor's exh. 41.

10. Even if these charges are potentially collectible, Aurora did not prove that the contract entitled it to impose the charges and did not provide evidence that the expenses were incurred or that incurred expenses were reasonable. Moreover, this court has held that Ohio law prohibits a creditor from collecting prepetition attorney fees from a borrower under these circumstances. *See In re Lake,* 245 B.R. 282 (Bankr.N.D.Ohio 2000). In the face of this long-standing ruling, Aurora nevertheless included these amounts in its proof of claim. Aurora states in its brief that it is aware that "this Court may frown upon the inclusion of such fees in a proof of claim[.]" Docket 39, Amended Brief at n. 4. A court holding such fees are not recoverable goes a bit beyond the court "frowning" on a practice and Aurora would be well-advised to consider this in the future. This court has said before, if a party disagrees with a ruling it is always free to appeal it. What it is not free to do is ignore it. *See* FED. R. BANKR. P. 9011(b).

can only be answered by a complete and accurate accounting for all monies received and all charges made. There is no such accounting here.

At this point, the court could simply sustain the debtor's objection. The court believes the better course is to both sustain the objection and grant Aurora leave to file an amended proof of claim, as described below.

## CONCLUSION

For the reasons stated above, the debtor's objection to Aurora's claim is sustained in part.

Aurora is granted leave to file an amended proof of claim calculated in accordance with this opinion. Specifically, Aurora is to delineate its connection to this loan, either as servicer or owner. If Aurora claims ownership, it is to attach documentation showing the chain of title leading to that conclusion. Additionally, Aurora is to account for all payments made by and on behalf of the debtor by applying them to taxes, insurance, principal, interest, and late charges. The late charges are not to exceed the ones listed on Aurora's spreadsheet. Aurora is not to deduct any other item from the debtor's payments, whether described as advances, disbursements, or accrued charges. Aurora is to attach to the amended proof of claim a spreadsheet in the same format as that offered by it as an exhibit at the hearing.

The amended proof of claim is to be filed on or before 20 days after the date on which this memorandum of opinion is entered. The debtor shall then have 20 days after the amended proof of claim is filed to object to it, if grounds for such objection exist.

A separate order will be entered reflecting this opinion.